**ALLSTATE INSURANCE COMPANY, INC., Appellant,**

v.

**MUNICIPALITY OF ANCHORAGE, Appellee.**

No. 3892.

Supreme Court of Alaska.

Aug. 31, 1979.

Kenneth P. Jacobus, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, for appellant.

Kenneth G. Norman, Julie A. Garfield, Asst. Municipal Attys., Theodore D. Berns, Municipal Atty., Anchorage, for appellee.

## OPINION

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.

CONNOR, Justice.

In this case we are asked to determine whether AS 21.03.060,[1] which reserves for the state the exclusive power to regulate the insurance industry in Alaska, prohibits a municipal equal rights commission from investigating a complaint against an insurance company alleging unfair discrimination in the failure to renew a policy. We have concluded that there is no such prohibition.

The basic facts are undisputed. On May 20, 1977, the Anchorage Equal Rights Commission (AERC) received a complaint from Waltraud Wessels. It alleged that the Allstate Insurance Company had discriminated against her solely on the grounds of marital status when it refused to renew her car insurance after she married a man with a poor driving record. She claimed that she had not sought coverage for her husband under a renewed policy but only desired to have her name changed to reflect her married status.

On June 22, 1977, the AERC issued a subpoena duces tecum requiring Allstate to appear before the Commission and to bring with it the answers to certain interrogatories.[2] When Allstate failed to respond, the municipality filed a complaint in the superior court seeking enforcement of the administrative subpoena. An amended complaint was filed on October 25, 1977, along with a Petition to Enforce Administrative Subpoena, and a hearing on the petition was scheduled for November 14. On that date, Allstate again failed to appear and, as a result, the superior court entered an order requiring the insurance company to answer the interrogatories and submit the requested documents to the AERC within two weeks.

On November 22, 1977, Allstate filed an answer denying the allegations in the complaint and alleging, as an affirmative defense, that the AERC and superior court lacked jurisdiction over matters relating to the business of insurance by reason of AS 21.03.060.[3] When Allstate failed to comply with the order of the superior court, the municipality filed a motion to show cause why Allstate should not be held in contempt. In response, Allstate moved for vacation of the November 14 order and for an order extending time to answer the interrogatories. Following a hearing on these

---

1. AS 21.03.060 states:

 *Pre-emption.* The state hereby pre-empts the field of regulating insurers and their general agents, agents and representatives. All political subdivisions of the state, including home rule boroughs or cities, are prohibited from requiring of an insurer, general agent, agent or representative regulated under this title an authorization, permit or registration of any kind for conducting transactions lawful under the authority granted by the state under this title.

2. The AERC submitted the following interrogatories to Allstate:

 1. State the name, address, phone number and title of the individual from whom further information concerning the subject matter of this Interrogatory may be obtained.
 2. If the full legal name and address of the business establishment named herein as Respondent is not accurate, state in full name and address.
 3. State the name(s) of the person(s) who is/are responsible for automobile insurance coverage to individuals.

4. Do you have written procedures or regulations governing the approval of automobile insurance coverage to individuals? If yes, attach copy of any such rules or regulations. If no, what procedures are followed?
5. State the name, title, age, sex, marital status, race, and national origin of the individual who approves and denies automobile insurance.
6. Attach a copy of national statistics if utilized by Respondent when computing cost of auto insurance coverage of an individual.
7. Attach copies of all rate schedules utilized by Respondent for automobile insurance coverage.
8. a) What criterion is used when increasing insurance coverage of an individual who marries?
 b) State Respondent's rationale for any such increase.

3. *See* footnote 1, *supra.*

motions,[4] the superior court denied the motion to vacate the order of November 14, declined to impose sanctions, and gave Allstate five additional days to answer the interrogatories. Allstate thereafter secured a stay of the superior court's order and appealed to this court for relief.

Anchorage is a home rule municipality. The Alaska Constitution, article X, section 11 provides:

A home rule borough or city may exercise all legislative powers not prohibited by law or by charter.

The AERC was created by the Municipality of Anchorage to investigate and attempt to eliminate discrimination in employment, housing, public accommodations, education and financing practices based upon race, color, sex, religion, national origin, marital status, age, or physical handicap.[5] The powers and duties of the Commission are specified in § 5.10.040 of the Anchorage Municipal Code, which provides:

The Commission may:

A. Hold public hearings and issue orders under Sections 5.30.030 and .50 of this title;

B. Administer oaths and affirmations, certify its official acts, issue subpoenas, subpoenas duces tecum, and other legal process to compel the attendance of witnesses and the production of testimony, books, records, papers, accounts, documents or things in any inquiry, investigation, hearing or proceeding before the commission; the commission may petition the superior court of the State of Alaska having jurisdiction to enforce its subpoenas, subpoenas duces tecum, and other legal process;

C. Intervene in any court proceeding brought under this title;

D. Enter into agreements with counterpart agencies at all governmental levels to promote effective and efficient enforcement of the law;

E. Grant relief described in Section 5.30.050 of this title;

F. Develop programs designed to bring about the prevention and elimination of discrimination;

G. Hire, subject to approval of the mayor, an executive director who shall serve at the pleasure of the commission;

H. Delegate to the executive director all powers and duties given it by this title, except the power to hold hearings, issue orders, and hire the executive director; and

I. Adopt procedural and evidentiary rules necessary to fulfill the intent of this title.

 It is clear that the powers and duties of the Commission, as an agency of municipal government, are limited by the restrictions on the general power of the municipality. Consequently, we agree with Allstate that AS 21.03.060 prohibits the AERC from issuing any orders or rules

---

**4.** These motions were heard on December 13, 1977, by Judge Seaborn Buckalew. The hearing held November 14, 1977, was before Judge Victor D. Carlson.

**5.** The relevant sections of the Anchorage Municipal Code are as follows:

5.10.010 *Prohibition.*
The public policy of Anchorage is declared to be equal opportunity for all persons. The Assembly finds that invidious discrimination in employment, housing, public accommodations, education and financing practices based upon race, color, sex, religion, national origin, marital status, age, or physical handicap adversely affects the welfare of the community. Accordingly, such discrimination is prohibited.

5.20.010 *Definitions.*
As used in this chapter:

. . . . .

I. "Financial institution" means commercial banks, trust companies, mutual savings banks, cooperative banks, homestead associations, credit unions, bonding companies, surety companies, or other commercial institutions which extend secured or unsecured credit or offer insurance.
5.10.020 *Establishment.*
Pursuant to the provisions of the Charter, there is established an equal rights commission of nine persons, which shall be known as the Anchorage Equal Rights Commission.

which would affect the business of insurance.[6] Here, however, the AERC has only sought to *investigate* a claim of unfair discrimination, and we are unable to say that a reasonable investigation alone is prohibited. Simply stated, an investigation is not a regulation.[7]

While it is true that the relevant ordinances provide that the Commission *shall* take action to eliminate any act or practice that it finds to be discriminatory,[8] it does not follow that the Commission is prohibited from investigating claims against insurance companies simply because it has no power to regulate the insurance industry. If, for example, the AERC were to conclude that a certain provision in a standardized policy, approved by the state Director of Insurance, in practice worked an invidious discrimination against certain members of the public, it could seek to remedy the problem by advising the Director of its findings and otherwise attempt to influence the state regulation. In this regard it is noteworthy that AMC 5.10.040, quoted above, states in part:

The commission may:

. . . . .

D. Enter into agreements with counterpart agencies at *all* levels of govern-

ment to promote effective and efficient enforcement of the law; [emphasis added]

Thus, by simply gathering information, making recommendations, and focusing public interest, the AERC can serve legitimate public interests without encroaching upon the exclusive power of the state to regulate the insurance industry. Therefore, we hold that AS 21.03.060 does not prohibit a municipality from conducting reasonable investigations into alleged discriminatory practices by insurance companies, and that the enabling provisions of the relevant Anchorage municipal ordinances are not, to that extent, "substantially irreconcilable" with AS 21.03.060. *See Jefferson v. State*, 527 P.2d 37, 43 (Alaska 1974).

◼ Allstate also points out that it did eventually offer to renew Mrs. Wessel's car insurance policy after she filed her complaint with the AERC, that the alleged discrimination was thereby cured, and that, therefore, the AERC was without power to further inquire into the matter. In support of this argument Allstate cites § 5.30.030 of the Anchorage Municipal Code, which states in pertinent part:

6. In no way do we intimate that the AERC would not be able to issue orders regarding discriminatory practices by insurance companies that do not directly involve insurance transactions, such as unfair discrimination in the hiring and firing of employees.

7. The Alaska Administrative Procedure Act defines the term "regulation" in AS 44.62.-640(a)(2) as follows:

(2) "regulation" means every rule, regulation, order, or standard of general application or the amendment, supplement or revision of a rule, regulation, order or standard adopted by a state agency to implement, interpret, or make specific the law enforced or administered by it, or to govern its procedure, except one which relates only to the internal management of a state agency; "regulation" does not include a form prescribed by a state agency or instructions relating to the use of the form, but this provision is not a limitation upon a requirement that a regulation be adopted under this chapter when one is needed to implement the law under which the form is issued; "regulation" includes "manu-

als," "policies," "instructions," "guides to enforcement," "interpretative bulletins," "interpretations," and the like, which have the effect of rules, orders, regulations or standards of general application, and this and similar phraseology shall not be used to avoid or circumvent this chapter; whether a regulation, regardless of name, is covered by this chapter depends in part on whether it affects the public or is used by the agency in dealing with the public.

8. Anchorage Municipal Code, section 5.30.020 provides:

*Investigation and Conciliation.*

The commission shall investigate promptly and impartially the matters set out in the filed complaint. If it determines that the allegations are supported by substantial evidence, it shall immediately attempt to eliminate the discriminatory act or practice by conference, persuasion and conciliation. The commission shall in any event make findings of fact within 180 days after the filing of the complaint.

*Public Hearing.*

If the commission determines that the efforts to eliminate the alleged discrimination are unsuccessful, the commission shall serve written notice, together with a copy of the complaint as it may be amended, requiring the person, employer, labor organization or employment agency charged in the complaint to answer the allegations of the complaint at a public hearing before the commission.

Allstate claims on this basis that the Commission had no authority to convene a hearing once the alleged discrimination was eliminated. We find no merit to this argument. AMC § 5.30.020 [9] charges the AERC with the duty to investigate alleged discriminatory acts and practices. Since there is the possibility that Allstate's action might have been part of a regular practice, the AERC may justifiably inquire into the matter.

■ As its final point on appeal, Allstate claims that it was improper for the superior court to proceed to enforce the administrative subpoena on November 14, 1977. We agree. In obtaining the November 14 hearing AERC was proceeding under the accelerated motion practice procedures set forth in Civil Rule 77(j).[10] That rule requires a showing of facts which justify expediting the proceedings. Here, where the only service on Allstate was by mail on the Division of Insurance on October 31, the superior court should have carefully scrutinized the pleadings to determine whether proceeding under Rule 77 in Allstate's absence was necessary. The only reason given by the AERC to justify such expedited proceedings was the approaching time limit of 180 days which it had to complete its investigation, and we feel this was insufficient. That deadline is not of surmounting importance since the court would be fully justified in extending it in view of the investigatory difficulties encountered by the Commission.

■ The lack of justification for proceedings under the expedited hearing provisions of Civil Rule 77(j), combined with serious questions as to whether Allstate received adequate actual notice of the November 14 hearing, has led us to conclude that the order of November 14 should be vacated. The case is therefore remanded for further proceedings consistent with this opinion.

RABINOWITZ, C. J., with whom BOOCHEVER, J., joins, dissented.

BOOCHEVER, J., dissented.

RABINOWITZ, Chief Justice, with whom BOOCHEVER, Justice, joins, dissenting.

I have concluded that the investigatory measures which were undertaken by the Anchorage Equal Rights Commission are prohibited by virtue of the legislature's enactment of a comprehensive insurance code.[1] In deciding this question, I find it of

---

9. *See* footnote 8, *supra.*

10. Civil Rule 77(j) provides:

The moving party may apply to the court for an order setting the hearing on shortened time by filing and serving a motion for hearing on shortened time. The motion for hearing on shortened time shall:

(1) State the time for hearing the motion on shortened time; and
(2) Include the certificate of counsel justifying oral argument on the principal motion as required by (d) of this rule unless earlier filed; and
(3) Include an affidavit showing facts which justify accelerating the time for hearing.

Service on the adverse party shall be completed at least 24 hours prior to the time set for the hearing on the motion for shortened time. If the adverse party is not timely served, counsel for the moving party shall file, prior to or at the time set for the hearing, a certificate explaining why service was not timely made.

At the hearing on the motion for shortened time, the court will set the time for hearing the principal motion.

1. *See* AS 21.03.010–21.90.110. In particular, I note that the insurance code expressly prohibits "unfair discrimination" in the issuance of insurance policies. AS 21.36.090(c) provides:

No person may make or permit arbitrary or unfair discrimination between insureds or property having like insuring or risk characteristics, in the premium or rates charged for a policy or contract of property, casualty, surety, marine, wet marine or transportation insurance, or in the dividends or other benefits payable on the insurance, or in the selection of it, or in any other of the terms and conditions of the insurance.

*See also* AS 21.36.110–120. The director of the Division of Insurance, Department of Com-

particular significance that the legislature explicitly pre-empted political subdivisions of the state from regulating the insurance business by providing that "[t]he state hereby pre-empts the field of regulating insurers and their general agents, agents and representatives." [2]

Although the majority agrees that AS 21.03.060 does indeed preclude the commission from issuing any orders or rules which could affect the business of insurance, it nevertheless carves out an "investigatory" exception to the pre-emption provisions of AS 21.03.060. The assumption underlying this pre-emption exception strikes me as unpersuasive. I think it somewhat naive to reason that mere investigation by a political subdivision can have no effect on the conducting of the business of insurance. In this case, for instance, one had only to consider the potential impact on the insurance company, which is burdened with the duty to respond to comprehensive interrogatories submitted by the commission, as well as the wide ranging subpoena duces tecum, requiring the production of all books, papers, documents, and things in Allstate's possession in any way related to the underlying complaint of discrimination. I think it is apparent that the "reasonable" investigative exception to state pre-emption of regulation of the insurance industry adopted by the court today creates the substantial possibility of balkanization of the insurance business within the State of Alaska through conflicting local regulatory efforts. This conclusion is reflective of my further view that the power to investigate in these circumstances is tantamount to the power to regulate.[3]

merce, has broad powers to remedy statutorily prohibited acts and practices by those in the insurance business. AS 21.36.320–340.

**2.** AS 21.03.060.

**3.** It is significant that the majority cites no cases in support of its holding that investigation, as opposed to regulation, of the insurance industry is within the authority of the local equal rights enforcement agency. The two courts which have directly addressed the issue, however, in the context of a conflict in jurisdiction between two separate *state* agencies which oversee the insurance business and the elimination of discriminatory practices, have both found that the applicable agency whose purpose is to eliminate discrimination has no authority whatsoever with respect to insurance. *Thompson v. IDS Life Ins. Co.,* 274 Or. 649, 549 P.2d 510, 513 (1976); *State, Div. of Human Rights v. Prudential Ins. Co.,* 273 N.W.2d 111, 112–15 (S.D. 1978). The *Prudential* case stated that:

> This conclusion does not indicate that insurance companies are free to engage in discriminatory practices. On the contrary, the insurance industry is subject to extensive and detailed regulation in Title 58 of our Code. . . . There are provisions to remedy such unfair discrimination by injunction, cease and desist order, criminal prosecution, and civil damages.

*Id.* at 113 n.4. In *Thompson v. IDS Life Ins. Co.,* 274 Or. 649, 549 P.2d 510, 512 (1976), the court explained:

> ORS 659.045 gives the Commissioner of Labor authority to investigate grievances under the Public Accommodations Act. . . . If insurance is included within the scope of the Public Accommodations Act, then reading these statutes together with ORS 746.015 and 737.310 means either that the Insurance Commissioner has concurrent authority to eliminate discrimination or that the Insurance Commissioner has been divested of his authority to eliminate discrimination in the insurance industry.
>
> The problem with construing the statutes so as to include insurance under the Public Accommodations Act and to still give effect to ORS 746.015 and 737.310 is that different standards are established. The Insurance Commissioner is instructed to eliminate unfair discrimination, whereas the Public Accommodations Act prohibits *all* discrimination. The reason for the different standards, as the plaintiff recognizes in her brief, is that insurance, to some extent, always involves discrimination, to a large degree based on statistical differences and actuarial tables. The legislature specifically intended, in enacting ORS 746.015 and 737.310, to only prohibit *unfair* discrimination in the sale of insurance policies. Plaintiff concedes that some practices would be upheld by the Insurance Commissioner which would not be upheld by the Labor Commissioner. Such administrative conflict should be avoided. In construing statutes, the practical administrative result is persuasive. [footnote omitted] [citation omitted]

Though the question here is the reconcilability of a municipal rather than the state equal rights commission's authority to investigate alleged discriminatory practices with the state director of insurance's authority to prohibit unfair discrimination in the issuance of policies, I think the rationale of the Oregon court is

Thus, I would hold the relevant Anchorage ordinances are substantially irreconcilable with Alaska's laws governing the regulation of the insurance business [4] and, therefore, that the commission lacked the authority to proceed in the circumstances of this case.

BOOCHEVER, Justice, dissenting.

I concur in Chief Justice Rabinowitz's dissent, but would modify it slightly to indicate that the Anchorage Equal Rights Commission may make investigations of alleged violations by insurance companies for the purpose of bringing the matters to the attention of the insurance commissioner. Such right to make investigations, however, would not involve any power to order insurance companies to answer interrogatories, submit documents, or otherwise respond to discovery.

I also wish to indicate my agreement with footnote 6 of the majority opinion which states that the Anchorage Equal Rights Commission may issue orders regarding discriminatory practices by insurance companies that do not directly involve insurance transactions, such as unfair discrimination in the hiring and firing of employees.

nevertheless persuasive. The Anchorage Equal Rights Commission cannot go about its investigation of an insurance company without necessarily overlapping with the state insurance director's own broad regulatory authority in that area. And the two responsible agencies frequently may be pursuing incompatible objectives. Therefore, investigatory activity, as well as the direct regulation of insurance by order or rule of the commission, must be pre-empted by the state statutory scheme of insurance regulation.

4. The test for determining pre-emption of a municipal ordinance by state law is established in *Jefferson v. State*, 527 P.2d 37, 43 (Alaska 1974) ("The question rests on whether the exercise of authority has been prohibited to municipalities. The prohibition must be either by express terms or by implication such as where the statute and ordinance are so substantially irreconcilable that one cannot be given its substantive effect if the other is to be accorded the weight of law.") (footnote omitted).