STATE of South Dakota, DIVISION OF HUMAN RIGHTS, ex rel. Robbie EWING, Appellant,

v.

PRUDENTIAL INSURANCE COMPANY OF AMERICA and Gary Heuer, Prudential District Agent, and Northeast South Dakota Community Action Program, Respondents.

No. 12414.

Supreme Court of South Dakota.

Argued Sept. 15, 1978.

Decided Nov. 30, 1978.

Lori Scully and LeAnn Larson, Finke, Asst. Attys. Gen., Pierre, for appellant; William J. Janklow, Atty. Gen., Pierre, on brief.

H. L. Fuller of Woods, Fuller, Shultz & Smith, Sioux Falls, for respondents Prudential Ins. Co. and Gary Heuer.

David E. Gilbertson, Sisseton, for respondent N. E. South Dakota Community Action Program.

DUNN, Justice.

This is an appeal from an order of the Human Rights Commission (Commission) finding that exclusion of benefits to unmarried persons for pregnancy and pregnancy-related disabilities under a group health insurance plan constituted illegal discrimination on the basis of sex. The circuit court reversed the Commission upon finding that providing a group insurance policy which does not include pregnancy in its coverage of unmarried persons does not constitute discrimination on the basis of sex. We affirm the circuit court in its reversal of the Commission.

The facts were stipulated by the parties. The Prudential Insurance Company of America (Prudential) is a life and health insurance company engaged in the business of selling insurance privately to selected risks. Prudential had issued a group insurance policy to the Northeast South Dakota Community Action Program (CAP). Prudential's policy form was approved by the South Dakota Commission of Insurance or by the Director of the Division of Insurance of the Department of Commerce and Consumer Affairs. The policy provided certain medical and hospital expense benefits to CAP employees who became covered individuals under the policy's terms.

The Prudential policy provided two basic classes of coverage, namely, employee only and employee and dependent. Complainant Ewing, who was at all times mentioned herein an employee of CAP, enrolled for employee-only health coverage due to the fact that she was not married and had no dependents. Thereafter, Ewing gave birth to a child and filed a claim with Prudential for maternity benefits which would pay for the medical expenses of the childbirth. Ewing's employee-only coverage did not include maternity benefits. The insurance policy provided maternity benefits to those employees who listed a spouse as a dependent and paid an increased premium. Therefore, Ewing's claim for maternity benefits was denied.

Ewing filed a complaint with the Commission alleging that "[s]ince marriage is not a prerequisite for pregnancy, this policy discriminates against unwed mothers and married women who for various reasons would not list their husbands as dependents" and that such denial of maternity benefits constituted sex discrimination in employment and public accommodations. The Commission concluded that CAP was an employer and Prudential was a public accommodation within the jurisdiction of the Commission under the South Dakota Human Relations Act of 1972 [1] (the Act). The Commission further concluded that the exclusion of benefits for pregnancy and pregnancy-related disabilities under group health insurance for employee-only coverage constituted illegal sex discrimination under the Act and the administrative rules promulgated thereunder.

1. SDCL 20–13.

This administrative decision was appealed to the circuit court. In reversing the Commission, the circuit court found that Prudential was not a public accommodation under the Act and that the Commission exceeded its statutory authority by adopting ARSD 20:03:09:12. The circuit court further found that the differentiation in maternity benefits in the group insurance policy was based upon marital status and not upon sex and held that such differentiation did not constitute illegal sex discrimination. On appeal to this court pursuant to SDCL 1–26–37, Ewing assigns as error the circuit court findings and holding listed above. Specifically, Ewing contends that Prudential is a covered public accommodation under the Act, that the Commission did not exceed its authority and did not legislate by passing ARSD 20:03:09:12, that differentiation in the insurance coverage was based upon sex and not marital status, and that providing an insurance policy for single persons which does not cover pregnancy is discrimination based upon sex.

■ In reviewing the circuit court's judgment, we must make the same review of the administrative agency's action as does the circuit court. SDCL 1–26–36. Our decision as to whether the administrative decision can be sustained must be made without the presumption that the circuit court's decision is correct. *Piper v. Neighborhood Youth Corps,* 1976, S.D., 241 N.W.2d 868.

■ The first issue is whether Prudential is a covered public accommodation under the Act. Among other proscriptions, the Act prohibits sex discrimination in the provision of public accommodations. SDCL 20–13–23.[2] In pertinent part, public accommodations is defined by the Act as "each and every place, establishment, or facility of whatever kind, nature, or class that caters or offers services, facilities, or goods to the general public for a fee, charge, or gratuitously." SDCL 20–13–1(12). Prudential does not solicit the patronage of the general public and is not a place of general trade; it only insures selected risks. The parties even stipulated to the fact that Prudential engaged itself in the business of selling insurance privately to selected risks. Such solicitation and selling through individual agents dealing with selected groups and selected risks on matters of private contract does not constitute a public accommodation.[3] Therefore, we conclude that Prudential is not a covered public accommodation under the Act and is not subject to the jurisdiction of the Commission under the circumstances present in this case.[4]

2. The full text of SDCL 20–13–23 reads as follows:

"It shall be an unfair or discriminatory practice for any person engaged in the provision of public accommodations because of race, color, creed, religion, sex, ancestry, or national origin, to fail or refuse to provide to any person access to the use of and benefit from the services and facilities of such public accommodations; or to accord adverse, unlawful, or unequal treatment to any person with respect to the availability of such services and facilities, the price or other consideration therefor, the scope and equality thereof, or the terms and conditions under which the same are made available, including terms and conditions relating to credit, payment, warranties, delivery, installation, and repair."

3. Ewing concedes that there is no reported case authority for the proposition that an insurance company qualifies as a public accommodation. One jurisdiction has held that a law similar to our Act regarding public accommodations did not include the sale and issuance of insurance. *Thompson v. IDS Life Insurance Company,* 1976, 274 Or. 649, 549 P.2d 510. In arriving at its holding, the Oregon Supreme Court reasoned that regulation of unfair discrimination in the business of insurance was a matter falling within the domain of the insurance commissioner.

4. This conclusion does not indicate that insurance companies are free to engage in discriminatory practices. On the contrary, the insurance industry is subject to extensive and detailed regulation in Title 58 of our Code. The issuance of health insurance policies is covered in an entire chapter. SDCL 58–17. Unfair discrimination is expressly proscribed "between individuals of the same class and of essentially the same hazard in the amount of premium, policy fees, or rates charged for any policy or contract of health insurance or in the benefits payable thereunder, or in any of the terms or conditions of such contract, or in any other manner whatever." SDCL 58–33–13. There are provisions to remedy such unfair discrimination by injunction, cease and desist order, criminal prosecution, and civil damages.

The Commission's jurisdiction over CAP is clearly established. It was stipulated that Ewing was at all times concerned in this case an employee of CAP. The Act, SDCL 20–13–10, expressly prohibits employers from committing unfair or discriminatory practices as follows:

"It shall be an unfair or discriminatory practice for any person, because of race, color, creed, religion, sex, ancestry, or national origin, to fail or refuse to hire, to discharge an employee, or to accord adverse or unequal treatment to any person or employee with respect to application, hiring, training, apprenticeship, tenure, promotion, upgrading, compensation, layoff, or any term or condition of employment."

The second issue raised by the state is whether the Commission exceeded its authority by adopting ARSD 20:03:09:12. The Act gives the Commission the "power and duty to adopt * * * regulations consistent with and necessary for the enforcement of" the Act's provisions. SDCL 20–13–27. The Commission adopted the administrative rule in question to implement SDCL 20–13–10 and a similar provision relating to labor organizations embodied in SDCL 20–13–12. The administrative rule reads in pertinent part as follows:

"No employer shall:

\*     \*     \*     \*     \*     \*

"(2) Treat disabilities caused or contributed to by pregnancy, miscarriage, abortion, childbirth, and recovery therefrom as other than temporary disabilities under any health, temporary disability insurance or any sick leave plan available in connection with employment. Written and unwritten employment policies and practices shall be applied to disability due to pregnancy or childbirth on the same terms and conditions as they are applied to other temporary disabilities." ARSD 20:03:09:12(2).

■ Regarding delegation of powers by the legislature to administrative agencies, it is understood that where the legislature sufficiently prescribes a policy, standard, or rule for the guidance of the administrative body, authority may be delegated to the administrative body in order to carry out the legislative purposes in detail and to exercise the administrative power to regulate and control. *Application of Kohlman,* 1978, S.D., 263 N.W.2d 674; *Clem v. City of Yankton,* 1968, 83 S.D. 386, 160 N.W.2d 125; *Boe v. Foss,* 1956, 76 S.D. 295, 77 N.W.2d 1. The legislature's policy is clear, i. e., to eliminate discrimination based upon race, color, creed, religion, sex, ancestry or national origin in the areas of employment, labor unions, housing, education, property rights, public accommodations and public services. SDCL 20–13. The standards for the guidance of the Commission are also clearly defined in SDCL 20–13–10, 20–13–12 and 20–13–1(14).

■ Although proper delegation of authority is established, the crux of the problem is whether the Commission was within the scope of the authority delegated to it when it adopted the administrative rule in question. The rule can in no way expand upon the statute that it purports to implement. The statute so implemented in the context of the present case only prohibits employers from according adverse or unequal treatment *on the basis of sex* with respect to terms and conditions of employment. SDCL 20–13–10. Turning to the rule itself, it can only apply to employers and their employment policies and practices and not to insurers and their insurance policies, i. e., the rule cannot dictate what an insurance plan must include in covered risks. The rule must be interpreted within the scope of the statute that it purports to implement.

■ We find that the rule requires that maternity disabilities *shall* be treated the same as all other temporary disabilities in health and temporary disability plans. This is a prescription of the content of insurance plans which dictates the treatment or coverage of risks that the insurance company must underwrite. Such prescription falls well beyond the scope of authority that the legislature properly delegated and brings itself in conflict with the insurance laws of

this state. SDCL 58–18–19. We conclude that the Commission exceeded its statutory authority in adopting ARSD 20:03:09:12(2).

▮ We now turn to an analysis of the substantive issue of whether the provision of employee-only coverage in a group health insurance policy which does not include maternity benefits constitutes sex discrimination in violation of SDCL 20–13–10. The health insurance policy maternity benefits provisions implemented by CAP preclude Ewing from obtaining coverage. This case involves Ewing's assertion that she is discriminated against on the basis of sex because her claim for payment of the medical expenses of her pregnancy and childbirth was denied on the basis of such preclusion.[5]

It is important to note that the insurance policy maternity provisions implemented by CAP are not available to single females and are equally unavailable to single males who also may have to bear the medical costs and expenses of a pregnancy and childbirth.[6] Although women are the only ones physically capable of pregnancy and childbirth, both men and women are legally capable of incurring responsibility and liability for bills for the medical expense of maternity. Under the insurance policy in question, the only way for a single female *or* male employee of CAP to obtain maternity benefits is to get married, declare the spouse as a dependent, and pay the additional premium. Therefore, the policy as implemented by CAP discriminates on the basis of marital status and not on any gender-based classification. Accordingly, we hold that the exclusion of single persons such as Ewing from the maternity benefits coverage under

the CAP group plan providing general coverage does not constitute sex discrimination violative of the Act embodied in SDCL 20–13.

Our holding finds support in the case of *Geduldig v. Aiello,* 1974, 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256. The United States Supreme Court found that a state disability insurance program which exempted pregnancy from coverage was not discrimination on the basis of sex and did not violate the constitutional guarantee of equal protection.[7] The *Aiello* court stated that there must be a showing that distinctions involving pregnancy and childbirth are "mere pretexts designed to effect an invidious discrimination against the members of one sex or the other * * *." 417 U.S. at 496–497 n. 20, 94 S.Ct. at 2492, 41 L.Ed.2d at 265.

More recently, the United States Supreme Court has held that a private employer's disability benefits plan which failed to cover pregnancy-related disabilities did not violate Title VII of the Civil Rights Act of 1964.[8] *General Electric Co. v. Gilbert,* 1976, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343. The court stated that discrimination based upon sex does not result simply because an employer's disability benefits plan is less than all inclusive, and the court found no indication that the exclusion of pregnancy disability benefits was a pretext for discriminating against women. We likewise find no indication that failure to include Ewing and other single persons in the maternity benefits coverage within the group health plan of CAP was in any way a pretext for discrimination against Ewing on the basis of sex.

5. This case simply involves the payment of medical bills. It must be remembered that there is no question of providing benefits under a plan of coverage which treats pregnancy differently than other disabilities; in this case, there is no coverage at all so disparate coverage between various disabilities is not at issue. No controversy exists with regard to seniority, maternity leave, sick leave, vacation leave, or income protection while recovering from childbirth.

6. SDCL 25–8–3 provides that where paternity is established the father is liable to pay the

expenses of the mother's pregnancy and confinement.

7. Accord, *Richards v. Omaha Public Schools,* 1975, 194 Neb. 463, 232 N.W.2d 29; *Seaman v. Spring Lake Park Ind. Sch. Dist. No. 16,* 1974, D.C.Minn., 387 F.Supp. 1168.

8. This is of considerable significance because the federal Civil Rights Act of 1964 is substantially similar to the South Dakota Human Rights Act of 1972.

The circuit court judgment reversing the decision of the Commission is affirmed.

WOLLMAN, C. J., ZASTROW and MORGAN, JJ., and ANDERST, Circuit Judge, concur.

ANDERST, Circuit Judge, sitting for PORTER, J., disqualified.