C. E. LIGHT, Plaintiff and Appellee,

v.

Robert P. ELLIOTT, Individually and d/b/a Lewis & Clark Marina, Defendant and Appellant,

and

Department of Game, Fish & Parks, a Department of the State of South Dakota, Defendant.

No. 12559.

Supreme Court of South Dakota.

Considered on Briefs May 16, 1979.

On Reassignment Sept. 3, 1980.

John Harmelink, Yankton, for plaintiff and appellee.

James R. Feyder of Simons, Gibbs, Feyder & Myers, Sioux Falls, for defendant and appellant.

DUNN, Justice (on reassignment).

Appellant Elliott appeals from a judgment of the circuit court permitting appellee Light to rent boat-docking facilities for the 1978 season. We reverse.

Appellant operates and manages Lewis and Clark Marina as lessee from the State of South Dakota. Appellee sought to rent marina slip space for his boat, as he had done since 1967. Appellant refused to rent him slip space, claiming appellee had not paid his previous year's bill in full, owing $5.68. Appellee contested this charge in writing, whereupon appellant made no effort to settle or close appellee's account, nor to resolve the dispute over the $5.68 charge. It is questionable whether appellant ever billed appellee for this amount after receiving written challenge of that charge.

Appellee sought and obtained a temporary injunction restraining appellant from renting this dock space to anyone other than appellee pending further court order. An interlocutory injunction was later obtained, which continued the effect of the temporary injunction throughout the pendency of the action on the merits.

The trial court found that the marina was a public concession controlled by the State of South Dakota, that appellant had followed precedent by giving preference to previous renters of dock space, and that appellee had rented space during the 1976 and 1977 seasons without incident. The court also found that in April of 1977, appellee, an attorney, began representing a former employee of appellant in legal proceedings against him.

The court concluded that because appellee tendered full payment for dock space during the 1978 season, and because the

dock space in question had not been committed to any other renter, appellant's refusal to rent to appellee was an unfair and discriminatory practice as defined by SDCL 20–13–1(14), and violated the protection afforded appellee by SDCL 20–13–23.

Appellee has failed to exhaust his administrative remedies and thus should not be heard by this court. SDCL 20–13–23 allows the State Commission on Human Rights the power to consider claims of discrimination in the use of public accommodations. This state commission is subject to the supervision of the director of the division of human rights. SDCL 20–13–2.1. This division is clearly considered by the legislature as an "administrative agency" and thus is governed by the Administrative Procedures Act. SDCL 1–26–1(1), as amended, and SDCL 20–13–46 and 20–13–47.

It is imperative for appellee to have presented his grievance to the State Commission on Human Rights before the trial court passed upon the merits. Failure to exhaust administrative remedies should have prompted the trial court to send the matter back for an administrative hearing. SDCL 1–26–30.* We do not question the authority of the trial court to issue an injunction but, once this was done, it is required that appellee present his complaint to the commission. The failure to do so is fatal.

The judgment of the trial court is reversed.

MORGAN and FOSHEIM, JJ., concur.

WOLLMAN, C. J., concurs specially.

HENDERSON, J., dissents.

WOLLMAN, Chief Justice (concurring specially).

I join in the reversal of the judgment of the circuit court, but for a different reason.

SDCL 20–13–23 provides:

* This issue was never raised before the trial court or on appeal. However, this court has generally held that where the legislature provides a remedy before an administrative agency, that the administrative agency has exclusive primary jurisdiction which precludes the parties from directly seeking adjudication in a

It shall be an unfair or discriminatory practice for any person engaged in the provision of public accommodations because of race, color, creed, religion, sex, ancestry, or national origin, to fail or refuse to provide to any person access to the use of and benefit from the services and facilities of such public accommodations; or to accord adverse, unlawful, or unequal treatment to any person with respect to the availability of such services and facilities, the price or other consideration therefor, the scope and equality thereof, or the terms and conditions under which the same are made available, including terms and conditions relating to credit, payment, warranties, delivery, installation, and repair.

The intent of SDCL 20–13, the South Dakota Human Relations Act of 1972, is clear: "[T]o eliminate discrimination based upon race, color, creed, religion, sex, ancestry or national origin in the areas of . . property rights, public accommodations and public services." *State, Div. of Human Rights v. Prudential Ins.*, 273 N.W.2d 111, 114 (S.D.1978). Appellee alleged no facts that would bring his claim within the purview of the Act. I would not read the Act to give a cause of action to every party involved in a personal feud.

HENDERSON, Justice (dissenting).

SDCL 20–13–23 provides:

It shall be an unfair or discriminatory practice for any person engaged in the provision of public accommodations because of race, color, creed, religion, sex, ancestry, or national origin, to fail or refuse to provide to any person access to the use of and benefit from the services and facilities of such public accommodations; or to accord adverse, unlawful, or

court. *Gottschalk v. Hegg*, 89 S.D. 89, 228 N.W.2d 640 (1975). Also see *Rowen v. LeMars Mut. Ins. Co. of Iowa*, 230 N.W.2d 905 (Iowa 1975). Thus, as this involves the jurisdiction of the trial court to hear the matter in the first instance, we must consider it on appeal.

unequal treatment to any person with respect to the availability of such services and facilities, the price or other consideration therefor, the scope and equality thereof, or the terms and conditions under which the same are made available, including terms and conditions relating to credit, payment, warranties, delivery, installation, and repair.

Appellee C. E. Light is a "person" under SDCL 20–13, captioned HUMAN RIGHTS. The purpose of this law is to accord *all* persons human rights and to prevent unfair or discriminatory practices against them.

Appellee, a lawyer, is being discriminated against in a public accommodation for his apparent audacity to bring suit on behalf of his client against appellant. The concession results from a lease granted by the State of South Dakota to appellant. The Secretary of the Army granted a lease covering approximately 1,407.62 acres of land and water, commonly known as the Lewis and Clark area, to the State of South Dakota for public park and recreational purposes. The U.S. Government lease to South Dakota provides, paragraph three:

> The lessee [South Dakota] shall provide the facilities and services necessary to meet the *public demand* for the use of the area for public park and recreational purposes either directly or through concession agreements. All concession agreements shall expressly state that they are granted subject to all the terms and conditions of this lease and that the concession agreement will not be effective until the terms and conditions thereof are approved by the District Engineer. (Emphasis supplied).

Thus, appellee cannot be refused access to the use and benefit of the services and facilities of such public accommodations. He desires to use, and is entitled to use, a public park for a recreational purpose Appellant's actions constituted an adverse, unlawful, and unequal treatment prohibited by SDCL 20–13–23.

I read SDCL 20–13–23 in the disjunctive rather than the conjunctive. Appellant's conduct was a discriminatory practice under SDCL 20–13–23. The relief under this statute is not limited to minorities, classes, or individuals delineated in the first clause of the statute. Appellee's rights should not be dependent upon the personal prejudices, likes, or dislikes of the appellant. After the semicolon it plainly states: "or [it is a discriminatory practice] to accord adverse, unlawful, or unequal treatment *to any person* with respect to the availability of such services and facilities . . ." (Emphasis supplied).

There appears to be no just or fair reason for the appellant to deny appellee the renting of a boat dock or slip. Appellant's refusal arises out of spite due to appellee's legal representation of a former employee. The Lewis and Clark Marina is a public marina and appellant does not have the right to unilaterally ignore appellee's right to rent a boat dock or slip. If appellant-appellee's relationship is characterized as a personal feud, appellant could not use his concession for the operation of a public accommodation as a vehicle in which to vent his personal feelings against appellee. Appellant's action is vindictive, without good cause, and contrary to the lease of the United States and the State of South Dakota.

Appellee's federal constitutional rights are being violated, particularly the rights afforded to him under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. The dock and slip in question here are located on real estate and water owned by the United States. The appellant is a concessionaire of the State of South Dakota, is an instrumentality of South Dakota, and hence is subject to the duties and requirements of the equal protection of the laws imposed upon South Dakota by the Fourteenth Amendment to the United States Constitution. *United States v. Raines*, 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed.2d 524 (1959).

One of the purposes behind the equal protection clause of the Fourteenth Amendment is to secure to every person within the state's jurisdiction a protection against actual discrimination arising from the ·method

of administering the law (or in this case the concession agreement) through duly constituted agents. *Sunday Lake Iron Co. v. Wakefield Township*, 247 U.S. 350, 38 S.Ct. 495, 62 L.Ed. 1154 (1917). This state cannot effectively abdicate its responsibilities under the equal protection clause by ignoring them or merely failing to discharge them. *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). No precise formula for the recognition of a state's responsibility under the clause can be fashioned and applied. Under the facts here, the state should have taken some affirmative action in enforcing its order which required appellant to offer appellee dock rental space.* The appellant is acting in the name of the state and his act is the act of the state. The equal protection clause extends to all actions of the state and its agents. By depriving appellee of the boat slip, appellant is violating the constitutional inhibition. It is as wrong to discriminate in the administration of a law as it is to create a denial of rights by a law itself.

For ten years, appellee had rented a boat dock or slip in this public accommodation. The only area available for dockage where large boats could be launched was this area where appellant refused appellee access. The state adopted a public rental policy to give preference to a class of persons who had purchased large boats, made sizeable investments, and rented year after year. Appellant singled out the appellee as a member of that class and discriminated against him because the appellee was a lawyer who undertook representation of a former employee of appellant. Under our system of government, citizens should be protected against discriminatory practices which deny them the same use and enjoyment of public areas furnished to other citizens in the same class. The trial court correctly concluded that appellant's refusal to lease unto appellee was not justified and that the appellant had failed to establish any just or equitable reason for his actions.

In this case, discriminatory application of an existing public policy by appellant acting as an instrumentality of the State of South Dakota was tantamount to improper or discriminatory application of a state statute or regulation. The appellant's actions here are reprehensible, unconstitutional, and in total defiance to the State of South Dakota's order. Under the majority decision, this defiance shall prevail over law and good reason.

*State v. Prudential Insurance Co.*, 273 N.W.2d 111 (S.D.1978), is distinguishable. There, we were adjudicating with reference to a life and health insurer engaged in the business of selling insurance privately. This court held that Prudential Insurance Company was not a covered public accommodation under this Act. Here, we are concerned with a public recreational area of 1,047.62 acres of land owned by the United States which, through its lessees, rents a public boat dock and slips.

If the letter, intent and spirit of SDCL 20–13–23 does not protect all persons against unfair or discriminatory practices in administration of public accommodations, the statute is by its limited application discriminatory. Consequently, such a limited application of SDCL 20–13–23 would violate the Fourteenth Amendment to the United States Constitution, requiring states to insure equal protection and administration of their laws. The Human Rights statutes of this state, designed to thwart discrimination, are not just applicable to minorities, certain classes, or select individuals. Lawyers are people, too.

The majority concludes that appellee must present his grievance to the State Commission on Human Rights before the circuit court can decide the case on its merits. Pursuant to Article V, § 5 of the South Dakota Constitution, the circuit court granted an interlocutory injunction during

---

* The Director of the Department of Game, Fish and Parks issued an Order requiring appellant Elliott to offer dock rental space to appellee Light. Appellant refused to comply with such Order and challenged the authority of the Department of Game, Fish and Parks to issue the Order.

pendency of this action. This section provides in pertinent part: "The circuit courts and judges thereof have the power to issue, hear and determine all original and remedial writs." As this Court stated in *Chicago, M., St. P. & P. R. Company v. Board of Railroad Commissioners of South Dakota*, 64 S.D. 279, 308, 266 N.W. 660, 666 (1936):

> By this language the power of the circuit courts to issue remedial writs and hear and determine the same in all cases according to the practice of our law as it existed at the date of the adoption of the Constitution was embedded in the Constitution, and such power, authority, and jurisdiction of the circuit courts is not subject to be impaired, diminished, or destroyed by the Legislature.

This principle was reiterated in *Camp Crook Independent School District No. 1, Harding County v. Shevling*, 65 S.D. 14, 24, 270 N.W. 518, 523 (1936), which stated:

> The equity jurisdiction thus vested in the circuit courts by the Constitution cannot be abrogated, impaired, or circumscribed by subsequent legislative act.

There can be no doubt that the circuit judge, statutorily and constitutionally, had a right to grant an interlocutory injunction. The majority opinion concedes this premise. I do not believe that it is mandatory to file a complaint with the Human Rights Commission once this case commenced in equity and jurisdiction became vested in the circuit court. Further, at no time did appellant ever question the jurisdiction of the circuit court. The jurisdiction question never arose in the circuit court and was not urged or briefed by these parties at the appellate level. The failure to exhaust an administrative remedy was never before the lower court and was not addressed to this Court. Whereof, therefore, do we speak? Would we have the trial court grant a motion never made? Would we have the trial court don an advocate's role?

One important difference exists between the cases cited in the footnote of the majority decision and this case. The dismissal of the plaintiff's cause of action in both *Gottschalk* and *Rowen* on the ground of failure to exhaust administrative means of relief was *in response to motions by the respective defendants* at the trial court level. The majority raised the issue in this case and then ruled upon it. I believe this distinction is pertinent, if not crucial.

This case was founded in equitable jurisdiction in our state courts and appellee should not be denied access to a trial court because he "may" file a complaint with the Human Rights Commission. Jurisdiction is like pregnancy: either you have it or you don't. The circuit court in this case had jurisdiction and never lost it.