Emily LaBORE, Charging
Party and Appellant,

v.

Michael C. MUTH, President Sylvester's
Inc., Respondent and Appellee,

and

South Dakota Division of Human Rights,
Dept. of Commerce and Regulation, Responding Agency and Appellee.

No. 17318.

Supreme Court of South Dakota.

Argued May 20, 1991.

Decided July 24, 1991.

Karen Gangle Sisseton, for charging party and appellant.

Danny R. Smeins, Britton, for respondent and appellee Muth.

Jeffrey P. Hallem Asst. Atty. Gen., Pierre, for responding agency and appellee; Mark Barnett, Atty. Gen., Pierre, on the brief.

AMUNDSON, Justice.

Emily LaBore (LaBore) appeals from a circuit court decision affirming a no probable cause determination issued by the State Division of Human Rights, Department of Commerce and Regulation (Department) in response to her charge of discrimination against Michael C. Muth (Muth) and Sylvester's Inc. (Sylvester's). We affirm.

## FACTS

The facts of this case are undisputed. In May, 1989, LaBore initiated a civil action alleging a claim of defamation of character (slander) against Candyce Lehr and Lisa Stenvold, both whom were employees of Sylvester's. Sylvester's is a bar and restaurant located east of Britton, South Dakota, and Muth is its President. Prior to the commencement of the slander action, LaBore had been a frequent customer of Sylvester's. On June 18, 1989, when LaBore went to Sylvester's, she was told to leave or the police would be called. The reason she was told to leave the premises was that her presence in the establishment created an uncomfortable and tense situation for the employees and other patrons of the bar as a result of the pending slander suit against the two Sylvester's employees. There was no allegation that LaBore's conduct was unacceptable, that she caused any disturbances, or that she was acting in a disorderly manner while on the premises.

LaBore then brought a charge of discrimination before Department alleging that Muth and Sylvester's were guilty of adverse, unlawful, or unequal treatment regarding the availability of public accommodations, pursuant to SDCL 20-13-23. She did not allege discrimination on the basis of race, color, creed, religion, sex, ancestry, disability, or national origin. On November 3, 1989, Department issued a determination of no probable cause and a decision finding that no probable cause existed to believe that Muth and Sylvester's were in violation of the South Dakota Human Relations Act of 1972, SDCL ch. 20-13. LaBore appealed to the circuit court. The circuit court affirmed Department's decision, and this appeal followed.

## ISSUES

1. Did Department and circuit court err in concluding that LaBore is not a protected person within the meaning of SDCL 20-13-23?

2. Did the action of Sylvester's Inc., by and through its president Michael C. Muth, accord adverse, unlawful, or unequal treatment to LaBore with respect to the availability of services and facilities, the scope and equality thereof, or the terms and conditions under which the same are made available to her?

## ANALYSIS

*1. SDCL 20-13-23.*

LaBore contends that the decision of both Department and the circuit court that she is not a protected person within the meaning of SDCL 20-13-23 (the statute) is erroneous. In its decision accompanying the determination of no probable cause, Department ruled that LaBore had "not established a prima facie case as she has not shown that her harm was caused by her membership in a protected class. The

basis for the charge is not one of those delineated by SDCL 20–13." The circuit court ruled "[t]hat LaBore's charge of public accommodation discrimination does not fall within statutory limitations" and affirmed the decision of Department.

■ On appeal, LaBore argues that Department and circuit court erroneously interpreted the statute to exclude her from its protection. The construction and interpretation of a statute presents a question of law. *In re Famous Brands, Inc.*, 347 N.W.2d 882, 884 (S.D.1984). "When we are called upon to evaluate questions of law, legal conclusions of both Department and the circuit court are fully reviewable." *Wessington Springs Educ. Ass'n v. Wessington Springs School Dist. #36–2*, 467 N.W.2d 101, 103 (S.D.1991) (citing *Permann v. Department of Labor*, 411 N.W.2d 113, 117 (S.D.1987)).

> The statute reads:
>
> It shall be an unfair or discriminatory practice for any person engaged in the provision of public accommodations because of race, color, creed, religion, sex, ancestry, disability or national origin, to fail or refuse to provide to any person access to the use of and benefit from the services and facilities of such public accommodations; or to accord adverse, unlawful, or unequal treatment to any person with respect to the availability of such services and facilities, the price or other consideration therefor, the scope and equality thereof, or the terms and conditions under which the same are made available, including terms and conditions relating to credit, payment, warranties, delivery, installation, and repair.

SDCL 20–13–23. In *State ex rel. Ewing v. Prudential Insurance Co.*, 273 N.W.2d 111 (S.D.1978), we construed this section of the Human Relations Act in the context of an exclusion of benefits to unmarried persons for pregnancy and pregnancy-related disabilities under a group health insurance plan.[1] In reaching our decision, we observed: "The legislature's policy is clear, i.e., to eliminate *discrimination based upon* race, color, creed, religion, sex, ancestry or national origin in the areas of employment, labor unions, housing, education, property rights, public accommodations and public services. SDCL 20–13." 273 N.W.2d at 114 (emphasis added). We held that the exclusion at issue did not violate SDCL 20–13–23 because, although such a policy discriminates on the basis of marital status, it does not discriminate based on sex or any gender-based classification.[2]

■ The Human Relations Act in general and SDCL 20–13–23 in particular prohibit only the types of discrimination enumerated by the statute, not all possible forms of discrimination. The definition of an unfair or discriminatory practice, as enumerated in SDCL 20–13–1(16) states:

> "Unfair or discriminatory practice" means any act or attempted act which *because of race, color, creed, religion, sex, ancestry, disability or national origin* results in the unequal treatment or separation or segregation of any person, or denies, prevents, limits, or otherwise adversely affects, or if accomplished would deny, prevent, limit, or otherwise adversely affect, the benefit or enjoyment by any person of employment, labor union membership, housing accommodations, property rights, education, public accommodations, and public services.

(Emphasis added). By definition an unfair or discriminatory practice must be an act or refusal to act based on, or "because of," membership in one of the specified classes. This policy is further evidenced by the enacting language employed by the legisla-

---

**1.** The statute at issue in *Prudential*, SDCL 20–13–23, is substantially similar to the form of the statute today. 273 N.W.2d at 113 n. 2. Subsequent to our decision in *Prudential*, in 1986 the Human Relations Act, SDCL ch. 20–13, was amended to include discrimination based on disability, and SDCL 20–13–23 was amended accordingly. 1986 S.D.Sess.L. ch. 170, § 17.

**2.** The specific maternity benefits of the policy at issue in *Prudential* were not available to single females, nor were they available to single males who, as we pointed out, "also may have to bear the medical costs and expenses of a pregnancy and childbirth." 273 N.W.2d at 115.

ture when enacting the Human Relations Act of 1972:

AN ACT Entitled, *An Act* providing for equality of opportunity and *prohibiting discriminatory practices based on race, color, creed, religion, sex, ancestry or national origin,* with respect to employment, labor union membership, housing accommodations, property rights, education, public accommodations, and public services; prescribing the powers and duties of the state commission on human relations; and providing enforcement procedures and prescribing penalties and remedies for violations, and to provide an appropriation therefor, and to repeal SDCL 1–31.

1972 S.D.Sess.L. ch. 11 (emphasis added). There is no indication in the Human Relations Act that the legislature intended to prohibit any and all forms of discrimination, only those "discriminatory practices based on race, color, creed, religion, sex, ancestry [, disability] or national origin.[3] When called upon to construe statutes, this court may look to the legislative history, title, and the total content of the legislation to ascertain the meaning. *In re Certification of Question of Law,* 402 N.W.2d 340 (S.D.1987); *Oahe Conservancy Subdistrict v. Janklow,* 308 N.W.2d 559 (S.D.1981); *Elfring v. Paterson,* 66 S.D. 458, 285 N.W. 443 (1939).

LaBore's charge of discrimination did not assert that she was the victim of discrimination based on any of the classes set forth in the statute and listed on the complaint form. She does not contend that she is a member of any racial, ethnic, religious or other enumerated group, nor does she contend that she was asked to leave based on

her gender. Notwithstanding these admitted deficiencies, LaBore asserts that she does not have to fall within one of the classes enumerated by the statute to invoke the protection of SDCL 20–13–23.

Specifically, LaBore contends that the second portion of the statute following the semicolon and using the disjunctive "or" indicates that the second part of the statute is an independent clause which stands separate and apart from the first half of the statute. She argues "it is reasonable to assume that, by including the [class membership] restrictions in the first half of the statute and setting it apart by a semicolon, a different, broader interpretation was intended to be given to the second half of the statute which, by its terms, applied to 'adverse, unlawful or unequal treatment' directed toward 'any person.'" For this construction of the statute, LaBore relies on Justice Henderson's dissent in *Light v. Elliot,* 295 N.W.2d 724, 725 (S.D.1980), in which he expressed his opinion that

[I]f the letter, intent and spirit of SDCL 20–13–23 does not protect all persons against unfair or discriminatory practices in administration of public accommodations, the statute is by its limited application discriminatory. Consequently, such a limited application of SDCL 20–12–23 would violate the Fourteenth Amendment to the United States Constitution, requiring states to insure equal protection and administration of their laws. The Human Rights statutes of this state are not just applicable to minorities, certain classes, or select individuals.

In *Light,* however, we declined to address the merits of appellant's charge of discrimi-

---

**3.** Under the Federal Civil Rights Act of 1964, which is substantially similar to the South Dakota Human Rights Act of 1972, federal courts have also refused to apply such statutes to apply to all types of discrimination. *See Regents of University of California v. Bakke,* 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978) (Title VI of Civil Rights Act of 1964 proscribes only those racial classifications that violate equal protection clause of 14th Amendment); *Blum v. Gulf Oil Corp.,* 597 F.2d 936 (5th Cir.1979) (discharge of employee for homosexuality not prohibited by Title VII of Civil Rights Act of 1964); *Seidenberg v. McSorleys' Old Ale House, Inc.,* 308

F.Supp. 1253 (S.D.N.Y.1969) (Title II of the Civil Rights Act of 1964 does not proscribe gender based discrimination); *Bonomo v. Louisiana Downs, Inc.,* 337 So.2d 553 (La.App.2d 1976) (42 U.S.C. § 2000a does not proscribe exclusion of convicted bookmakers from racetracks where such exclusion is without regard to race, religion, or national ancestry). *See also Sedlacek v. S.D. Teener Baseball Program,* 437 N.W.2d 866 (S.D.1989) (Human Rights Act provision exempting certain programs and activities from Act's sex discrimination prohibition does not violate equal protection).

nation, and thus did not reach the question regarding the interpretation of the statute. *Id.*

 Our review of the statute makes it clear that SDCL 20–13–23 and the Human Relations Act in general were intended to address discrimination *because of* class membership. *See Prudential,* 273 N.W.2d at 114. LaBore's contention that only the first half of the statute relates to class based discrimination, and that the second half of the statute applies to any adverse, unlawful or unequal treatment directed toward *any person,* is based on an erroneous belief that the second portion of the statute, set apart by a semicolon, is an independent clause unrelated to the first half of the statute. To begin, we reiterate the rule that punctuation shall not control the construction of a statute to cause an interpretation that is inconsistent with the purpose of the statute. SDCL 2–14–8. An examination of the statute indicates that the clause to which LaBore refers is in fact a dependent clause, not an independent clause. We set forth the statute again, with emphasis, to indicate this:

It shall be an unfair or discriminatory practice for any person engaged in the provision of public accommodations because of race, color, creed, religion, sex, ancestry, disability or national origin, *to fail or refuse to provide* to any person access to the use of and benefit from the services and facilities of such public accommodations; *or to accord adverse, unlawful, or unequal treatment* to any person with respect to the availability of such services and facilities, the price or other consideration therefor, the scope and equality thereof, or the terms and conditions under which the same are made available, including terms and conditions relating to credit, payment, warranties, delivery, installation, and repair.

Each of the dependent clauses relates back to the provision prohibiting discrimination "because of" class membership. Thus, to establish a prima facie case under SDCL 20–13–23, the charging party must establish (1) that he or she is a member of a protected class, (2) that he or she has been

denied access to and use of, or accorded adverse, unlawful, or unequal treatment with respect to public accommodations, and (3) that there is a causal connection between class membership and the denial or adverse treatment. Because LaBore does not contend she was subjected to discrimination based on her membership in any of the classes enumerated in the statute, Department properly determined that she had failed to establish a prima facie case and issued its no probable cause determination.

The interpretation urged by LaBore is inconsistent with the legislative intent of the Human Relations Act as a whole. In addition to the express language of SDCL 20–13–23 and SDCL 20–13–1(16), and our ruling in *Prudential,* the language of the legislature in enacting the Human Relations Act expressly states the Act's purpose "to prohibit discriminatory practices *based on* race, color, creed, religion, sex, ancestry [, disability] or national origin[.]" 1972 S.D.Sess.L. ch. 11 (emphasis added). While it might be desirable to protect all citizens of our state from every possible unfair or discriminatory practice in the administration of public accommodations, we are bound by the actual language of the statute. *See Wessington Springs Educ. Ass'n,* 467 N.W.2d at 105. Any expansion of the protection afforded by the statute must be left to the state legislature, as to adopt LaBore's proposed interpretation would be tantamount to judicial legislating. *Id.*

Because we have concluded that LaBore failed to establish a prima facie case for a charge of discrimination against Muth and Sylvester's Inc., it is unnecessary to address the merits of LaBore's second issue. The decisions of Department and the circuit court are affirmed.

MILLER, C.J., and WUEST and SABERS, JJ., concur.

HENDERSON, J., dissents.

HENDERSON, Justice (dissenting).

Under South Dakota law, is discrimination restricted to discrimination based upon

race, color, creed, religion, sex, ancestry, disability or national origin? No.

Under South Dakota law, has the majority opinion forsaken a reasonable interpretation of the express language in SDCL 20–13–23 to apply "... for *any* person[1] ...; or to accord adverse, unlawful or unequal treatment to *any* person ...?" Yes.

Has the majority opinion relied upon erroneously applied federal law? Yes.

Accordingly, I respectfully dissent.

Sylvester's, Inc. is a "public accommodation" as defined by SDCL 20–13–1(12). It is open to the public as a bar and restaurant. It further hosts live entertainment and dances. Apparently, the only limitation placed on use of the facility by the public would be that of age.

LaBore has been a regular patron of Sylvester's. At no time, while therein, has she engaged in conduct which would have been an annoyance to the other members of the public or the management.

The source of her problem stems from a slander suit that she filed against two employees of Sylvester's. The management refused to serve her and asked her to leave, as she was told it was an uncomfortable situation for her to remain in Sylvester's, and for her to be in contact with two of Sylvester's employees whom she was suing. Commission dismissed LaBore's complaint. LaBore responds that the portion of SDCL 20–13–23 which follows the semi-colon stands on its own and prohibits any type of discrimination. I agree. LaBore has acknowledged that she has not been, per se, the victim of any discrimination based on race, color, creed, religion, sex, ancestry, disability or national origin. All parties agree that the source of her banishment from Sylvester's is her suit against two of its employees. Britton, South Dakota, is not Minneapolis, Chicago, New York, Atlanta, Seattle, or San Antonio. It is a small agricultural town and community, on the prairie of South Dakota, without great population and public accommodations. It has a population of 1,394.[2]

Banishment from this public accommodation is meaningful to LaBore. She should not be humiliated or disgraced because she sued two of the workers for defamation. She is entitled to equal protection of the law. (Fourteenth Amendment to the United States Constitution). Apparently, under the reasoning of the majority opinion, Emily LaBore is not a "person." I believe she is a "person." You do not have to be a member of a minority race to be a "person." You do not have to be Norwegian, Jewish or Italian to be a "person." You do not have to be a Methodist or a Catholic to be a "person." You can be an agnostic and still be a "person." You can be a Hindu, in America, and you are still a "person." To be a *favored person*, apparently you must belong to a certain *favored class*. Discrimination may exist only, by the majority opinion, by class. The United States Constitution centers on individual rights. Indeed, the Fourteenth Amendment was deliberately formulated to prohibit precisely such classifications. The Constitution must be color blind, religion blind, sex blind, ancestry blind, disability blind, national origin blind and class blind. We have, before us, a young, white, female "person" who is refused food or drink in a restaurant/cocktail lounge because, apparently, she had the audacity to retain counsel and bring suit for defamation. Having hired counsel, to protect her name, a right guaranteed to her under the state and national constitutions, she is now publicly disgraced by being refused service in a public accommodation. In 1748, de Montesquie admonished: "The deterioration [of government] begins with the decay of the principles upon which it was founded."

Do you believe that an individual in a society—such as America—millions strong—has worth? I do. Early generations were subjugated to the divine rights of Kings and Caesars. We Americans expressed that *each individual* had certain inalienable rights, among these being that *all* men [women] are created equal, and are endowed with the rights of Life, Liberty,

---

**1.** A corporation, such as Sylvester's, Inc., is a "person" under the law.

**2.** Judicial notice is taken thereof via SDCL 19–10–2.

and the Pursuit of Happiness. Shaming this young lady in public is not permitting her to pursue happiness. In South Dakota, my forefathers apparently took it upon themselves to read the Declaration of Independence for they incorporated expressly some of its language in the State Constitution, Article VI § 1. This includes the Pursuit of Happiness. Article VI § 26 addresses the proposition that all free government is instituted for the people's equal protection and benefit. LaBore is not being equally protected. She is cast out in the outer darkness of the law because she is not a "person" of a favored class.

Under the terms of the two key statutes in South Dakota, SDCL 20–13–23 and SDCL 20–13–1(16), the rights of LaBore are quite explicit. Our lawmakers went far beyond the Federal Civil Rights Act of 1964. Lawyers can read; so can professors; so can the academe. The word "or" is in both statutes. Majority pays it no heed. In North Dakota, "or" means something. Hooray for the North Dakotans! *See, State v. Silseth,* 399 N.W.2d 868 (N.D.1987). The North Dakotans reasoned that "or" is a disjunctive conjunction. Yes, a conjunction reflecting an alternative between different things or actions. "Or" must mean something. It cannot mean nothing. If the intent, as the majority opinion instructs us, was to limit the application of the entire statute to discrimination based upon race, color, creed, etc., it certainly would not have been necessary to set forth these restrictions in the first half of the statute. Rather, the Legislature (not an agency of government like the Division of Human Rights within another agency—the Department of Commerce and Regulation), *expressing the will of the people,* saw fit to legislate far more broadly. And the language is there. SDCL 20–13–23 is there for all to see and all to read. It reads, after the semi-colon:

> [O]*r to accord adverse, unlawful, or unequal treatment to any person with respect to the availability of such services and facilities,* the price or other consideration thereof, or the terms and conditions under which the same are made available, including terms and conditions relating to credit, payment, warranties, delivery, installation, and repair. (emphasis supplied).

If that is not clear enough, the second portion of SDCL 20–13–1(16) provides:

> *..., or otherwise adversely affects, or if accomplished would deny, prevent, limit, or otherwise adversely affect, the benefit or enjoyment by any person of* employment, labor union membership, housing accommodations, property rights, education, *public accommodations, and public services.* (emphasis supplied).

Construction of a statute is a question of law. *Petition of Famous Brands,* 347 N.W.2d 882 (S.D.1984). Here, the majority construes one-half of the statute and holds the second half of the statute to be meaningless. All of the provisions of this statute are needed by each person in this state; the provisions are good; nothing is fair about them—nothing is good—if some are honored and some are dishonored.

Civil rights statutes should not have restrictive applications. We have, before us, a classic example of reverse discrimination. There is no doubt that the human rights statutes of this Nation were enacted to afford those rights and privileges to classes of people which were traditionally discriminated against. But it does not make common sense to hold that everyone else, who does not fit squarely in a class, is a fair target for discriminatory conduct.

Here, we have "sensitivities" of employees in public accommodation exalted and, supposedly, providing a lawful reason to refuse service; but what of the "sensibilities" of this young, white lady who sits down and orders her dinner? Her "sensibilities" are totally disregarded. As an old fella sitting on a bench in front of a country store might well muse "it ain't right!"