Richard F. WELLER and Darolyn D. Weller, Plaintiffs and Appellants,

v.

SPRING CREEK RESORT, INC., John Brakss and Marlene Brakss, Defendants and Appellees.

No. 17308.

Supreme Court of South Dakota.

Considered on briefs April 22, 1991.

Reassigned Aug. 22, 1991.

Decided Nov. 20, 1991.

Gary F. Colwill of Schmidt, Schroyer, Colwill & Barnett, Pierre, for plaintiffs and appellants.

Brent A. Wilbur of May, Adam, Gerdes & Thompson, Pierre, for defendants and appellees.

AMUNDSON, Justice (on reassignment).

Richard F. Weller and Darolyn D. Weller (Weller) appeal from the circuit court decision granting Spring Creek Resort, Inc., John Brakss' and Marlene Brakss' (Brakss)

motion to dismiss for failure to state a claim upon which relief could be granted. We affirm in part, reverse in part, and remand.

## FACTS

Brakss have operated and managed the Spring Creek Marina on property leased from the Army Corps of Engineers since 1982. Wellers leased a marina mooring space for their house boat in the 1988 and 1989 seasons. At the end of the 1989 season, Wellers made an oral request to Brakss for the same mooring space for 1990. In January, 1990, Wellers became aware that other lessees of mooring spaces at the marina had received a letter from Brakss informing them that the mooring fees for 1990 should be paid by February 1, 1990. Wellers, at about this time, sent a check for the entire 1990 rent to Brakss in order to reserve their space. Approximately two months after receiving Wellers' check, Brakss returned same to Wellers. Wellers were advised at this time that due to low water level in the marina, Wellers' house boat could not be accommodated during 1990. All subsequent efforts made by Wellers to lease a space from Brakss for 1990 were unsuccessful.

Wellers then filed an action against Brakss seeking injunctive relief and damages, both actual and exemplary. Wellers' complaint alleged causes of action for discrimination, breach of express contract and breach of implied contract. Brakss answered and filed an SDCL 15–6–12(b)(5) motion for failure to state a claim upon which relief could be granted. After a hearing on this motion, the trial court entered its order dismissing Wellers' complaint for failure to state a claim, and this appeal followed.

## ISSUE

DID THE TRIAL COURT ERR IN DISMISSING WELLERS' ACTION FOR FAILURE TO STATE A CLAIM PURSUANT TO SDCL 15–6–12(b)(5)?

## ANALYSIS

The standard of review for a 12(b)(5) motion is set forth in *Norwest Bank Black Hills v. Credit Union,* 433 N.W.2d 560, 564 (S.D.1988), as follows:

1. The complaint is to be construed in the light most favorable to the pleading party.

2. Facts, well pleaded, and not merely conclusions may be accepted as true and doubts are to be resolved in favor of the pleader.

3. Pleadings should not be dismissed merely because the court entertains doubts as to whether the pleader will prevail in the action.

4. Rules of procedure favor the resolution of cases upon the merits by trial or *summary judgment* rather than on failed or inartful pleadings. (Emphasis added.) (Citation omitted.)

With these standards in mind, we address the merits of Wellers' appeal.

### 1. Discrimination

■ ■ A claim of discrimination must be filed with the State Division of Human Rights (State) pursuant to SDCL 20–13–23. The pleadings on record in this case clearly disclose that Wellers did not file any claim of discrimination with State. This is a palpable example of failure of a party to exhaust his/her administrative remedies and this is fatal to a discrimination claim. *Light v. Elliott,* 295 N.W.2d 724 (S.D.1980). Further, this court has recently held in *LaBore v. Muth,* 473 N.W.2d 485 (S.D.1991), that a valid claim for discrimination has to be based on a person's membership in one or more of the classes enumerated in SDCL 20–13–23, *i.e.,* race, color, creed, religion, sex, ancestry, disability, or national origin. The pleading filed by Wellers in this case does not give an inkling of any claim of discrimination based on membership in any of the above enumerated classes. Failure to establish membership in a protected class is fatal to a discrimination action. *LaBore, supra.* For the reasons stated above, we find no error in the trial court's dismissal of the discrimination claim.

## 2. Express and Implied Contract

■ In this jurisdiction, a contract can be either express or implied. SDCL 53-1-3. It is express if the terms are stated in words, oral or written. *Anderson v. Dunn*, 68 S.D. 479, 4 N.W.2d 810 (1942). An implied contract was defined in *Mathews v. Twin City Const. Co. Inc.*, 357 N.W.2d 500, 507, (S.D.1984), as follows:

An implied contract is one, the existence and terms of which are manifested by conduct. 'Conduct' can be both acts and words. By its very nature, an implicit agreement is not as detailed as a written agreement formally negotiated.

An implied contract is a fiction of the law adopted to achieve justice where no true contract exists. *Mahan v. Mahan*, 80 S.D. 211, 121 N.W.2d 367 (1963).

A contract is implied in fact where the intention as to it is not manifested by direct or explicit words by the parties, but is to be gathered by implication or proper deduction from the conduct of the parties, language used, or acts done by them, or other pertinent circumstances attending the transaction.

80 S.D. at 215, 121 N.W.2d at 369.

Further, this court held in *Federal Land Bank of Omaha v. Houck*, 68 S.D. 449, 463, 4 N.W.2d 213, 219-20 (1942), that "facts are viewed objectively and if a party voluntarily indulges in conduct reasonably indicating assent he may be bound even though his conduct does not truly express the state of his mind." *See also Mitzel v. Hauck*, 78 S.D. 543, 105 N.W.2d 378 (1960).

■ If, in fact, a valid express contract exists, which establishes the rights of the contracting parties, no implied contract will be or need be inferred. *Ryken v. Blumer*, 307 N.W.2d 865 (S.D.1981); *Mid–America Mktg. v. Dakota Industries*, 281 N.W.2d 419 (S.D.1979); *Thurston v. Cedric Sanders Company*, 80 S.D. 426, 125 N.W.2d 496 (1963).

■ Wellers' amended complaint alleges that they advised Brakss of their desire to rent their customary space in 1990 at the conclusion of the 1989 season; they made improvements to their space in 1989 to accommodate their space; they sent a check to Brakss for the 1990 rent, which was returned by Brakss after approximately two months. Brakss "[had] an implied contract with plaintiffs (Wellers)—Count IV—BREACH OF CONTRACT and the conduct of Brakss surrounding the 1990 season created an implied contract between the parties—Count V—BREACH OF IMPLIED CONTRACT." By reading the allegations in the amended complaint, one can only conclude that there is no allegation of any express agreement having been entered into by the parties for the 1990 season. In fact, as noted above, Wellers alleged only that Brakss "by developing the facilities at the Spring Creek Marina and advertising them, ... have *impliedly contracted with* [Wellers] and other members of the public...." This amended complaint can only be construed as containing allegations of conduct on the part of Brakss which could serve as the basis for a determination that an implied contract existed or was created for the 1990 season. In *Continental Ins. v. Page Engineering Co.*, 783 P.2d 641, 651 (Wyo.1989), the court was considering a claim that an implied contract existed and held as follows:

Although the question of whether particular conduct is sufficient to support a finding that an implied contract exists is generally submitted to a trier of fact, the question may be resolved by summary judgment if reasonable minds could not differ. (Citation omitted.)

*See also Johnson v. Kreiser's, Inc.*, 433 N.W.2d 225 (S.D.1988).

In adhering to the deference to be given to the pleadings in a 12(b)(5) motion, we conclude that sufficient allegations of conduct are pleaded therein so that the appropriate resolution of the implied contract cause of action is upon the merits by trial or summary judgment proceeding.* On

* SDCL 15-6-12(b) only allows "matters outside the pleadings" to be considered under (5) when the trial court has notified the parties of its intention to treat the motion as one for summary judgment under § 15-6-56. This record does not indicate such an intention on the part of the trial court and this court is therefore only ruling on the sufficiency of the facts pleaded.

the other hand, a simple reading of the pleadings discloses that Weller has failed to allege any express words either oral or written on the part of Brakss which would serve as the basis for an express contract cause of action. In conclusion, we find that the trial court erred in dismissing the implied contract claim cause of action, but not the discrimination and express contract causes of action.

Affirmed in part, reversed in part, and remanded.

MILLER, C.J., and SABERS, J., concur.

HENDERSON, J., and MOSES, Circuit Judge, dissent.

MOSES, Circuit Judge, for WUEST, J., disqualified.

MOSES, Circuit Judge (concurring in part and dissenting in part).

I concur with the majority on all of the issues with the exception of affirming the trial court on its dismissal of the unequal treatment discrimination claim. To the dismissal of this discrimination action, I dissent.

This discrimination area has been thoroughly explored and articulated well both by majority opinions as well as by dissents in *LaBore v. Muth,* 473 N.W.2d 485 (S.D.1991), and *Light v. Elliot,* 295 N.W.2d 724 (S.D.1980). I do not desire to duplicate or explicate those arguments in this special writing.

There are two observations that I have not seen presented: 1. Statutes prohibiting the discrimination based on race, color, creed, religion, sex, ancestry, disability or national origin are common in all of the codes of the various states. What is not common is South Dakota's statutory provision after the word "or" in SDCL 20–13–23:

It shall be an unfair or discriminatory practice for any person engaged in the provision of public accommodations because of race, color, creed, religion, sex, ancestry, disability or national origin, to fail or refuse to provide to any person access to the use of and benefit from the services and facilities of such public ac-

commodations; or *to accord adverse, unlawful, or unequal treatment to any person with respect to the availability of such services and facilities, the price or other consideration therefor, the scope and equality thereof, or the terms and conditions under which the same are made available, including terms and conditions relating to credit, payment, warranties, delivery, installation, and repair.*

In researching SDCL 20–13–23 it was initially my intention that I would be able to find similar language in another state code, and find out how that state interprets that language in case law. In order to find out which states would have this language I used "Lexis," computer assisted, on-line legal research (CALR). (*See Mead Data Cent. v. Toyota Motor Sales, U.S.A.,* 702 F.Supp. 1031 (D.C.N.Y.1988); rev'd 875 F.2d 308 (2d Cir.1989); 875 F.2d 1026 (2d Cir.1989); *West Publishing Company v. Mead Data Cent., Inc.,* 799 F.2d 1219 (8th Cir.1986); *cert. denied* 479 U.S. 1070, 107 S.Ct. 962, 93 L.Ed.2d 1010 (1987), for further explanation of CALR.)

In searching the codes of all fifty states, the Virgin Islands, and the District of Columbia, only seven statutes appeared to have this language. These seven statutes are only in the South Dakota code. The Federal Civil Rights Act of 1964 does not have this language in it.

From this analysis, it is my opinion that SDCL 20–13–23 is peculiar and allows the citizens of South Dakota redress from any unfair or discriminatory practice from public accommodations because of race, color, creed, religion, sex, ancestry, disability or national origin. Further, it allows all citizens relief from adverse, unlawful, or unequal treatment with respect to services and facilities of public accommodations which must meet the standards of the statute.

2. The interpretation given to the statute after *LaBore, supra,* is that not only are individuals charging discrimination required to come within the standard of being accorded adverse, unlawful or unequal treatment, but they further need to show

that they come within a class of race, color, creed, religion, sex, ancestry, disability or national origin.

If this is true, why would the legislature enact a separate statute * for equal treatment for disabled people? SDCL 20–13–23.1. Under the *LaBore* court interpretation, would not they come within SDCL 20–13–23?

We are to interpret the statutes as a whole and by giving statutory language its plain, ordinary, popular meaning. *State v. Ventling*, 452 N.W.2d 123 (S.D.1990). This is a remedial statute and in construing such a statute it is proper to take into consideration the mischief sought to be remedied. *Curtis v. Michaelson*, 206 Iowa 111, 219 N.W. 49, 52 (1928). A statute intended for the public benefit is to be taken most strongly against those who claim rights or powers under it and most favorable to the public. *Hipp v. Prudential Casualty & Surety Co. of St. Louis, Mo.*, 60 S.D. 300, 244 N.W. 346 (1932). A remedial statute is to be liberally construed to effectuate its purposes. *State for Use of Smith v. Tyonek Timber Inc.*, 680 P.2d 1148 (Alaska 1984).

The *LaBore* court, as justification for the class concept being required to seek relief, indicated that the policy is further evidenced by the language employed by the legislature when enacting the Human Relations Act of 1972:

> AN ACT Entitled, An Act providing for equality of opportunity and prohibiting discriminatory practices based on race, color, creed, religion, sex, ancestry or national origin, with respect to employment ...

Note that the title also provides "equality of opportunity" which is not underlined nor referred to by the *LaBore* court.

The *LaBore* court also indicated in a footnote that the United States and all of the states have similar language. While the language may be similar, they do not include the language after the "or" as previously noted.

In his dissent Justice Wollman indicated that he would not read this statute as giving a cause of action to every party involved in a personal feud. *Light, supra.* He never interpreted such language as requiring class membership as described in the *LaBore* court.

My interpretation is that if you can come within the parameters of the unequal treatment statute, even if not a member of the class, you should be entitled to relief.

I am authorized to state that Justice HENDERSON joins me in this concurrence in part and dissent in part.

---

* SDCL 20–13–23.1 provides as follows:

> Any person with a disability is entitled to reasonably equal accommodations, advantages, facilities and privileges of all hotels, lodging places, places of public accommodation, amusement or resort, and other places to which the general public is invited, subject only to the conditions and limitations established by law and applicable alike to all persons.