VEIGEL, Commissioner of Banks of State of Minnesota, for Use of RUTHTON STATE BANK, Respondent, v. DAKOTA TRUST & SAVINGS BANK, et al, Appellants.

(225 N. W. 657.)

(File No. 6616. Opinion filed June 4, 1929.)

*M. G. Luddy* and *Roy E. Willy,* both of Sioux Falls, and *T. B. Thorson,* of Pierre, for Appellant.

*Boyce, Warren & Fairbank,* of Sioux Falls, and *George P. Gurley,* of Pipestone, Minn., for Respondent.

BROWN, J. As security for a loan, Dakota Trust & Savings Bank took 63 shares of 'the capital stock of Ruthton State Bank, of Ruthton, Minn., and, default being made in payment of the loan, the security was foreclosed on or about April 22, 1922, and the bank became the owner of the stock, which was bid in in the name

of its cashier. Soon thereafter a 50 per cent assessment was levied on the stock, which the bank paid. It does not appear that it ever received any dividend on the stock. On September 25, 1923, it purchased 14 additional shares of the stock of the Ruthton bank. This purchase was made because a consolidation of the Ruthton State Bank with another bank in Ruthton was contemplated, and the president and cashier of Dakota Trust & Savings Bank thought that, if such a consolidation took place, it would greatly impair the value of the stock which their bank held, and that, by making the purchase of these additional shares, they would be able, in combination with other stockholders in the Ruthton State Bank who opposed consolidation, to control the situation and prevent the consolidation. The day after this purchase was made, a 60 per cent assessment on the stock of the Ruthton bank, which the officers of the Dakota Trust & Savings Bank knew would have to be levied when they purchased the 14 shares, was made, and paid by the Dakota Trust & Savings Bank on the full 77 shares which it now held.

The Dakota Trust & Savings Bank closed its doors on May 12, 1924, and was taken over by the superintendent of banks, who gave the statutory notice to creditors to present claims, and the time within which claims could be presented pursuant to such notice expired on October 9, 1924.

On April 16, 1925, Ruthton State Bank closed its doors and was taken over by the commissioner of banks of the state of Minnesota. On his application showing that the assets of that bank were insufficient by more than $100,000 to pay its liabilities, the district court of Pipestone county, Minn., on September 25, 1925, ordered an assessment of 100 per cent upon all the stock of the bank, and directed the commissioner of banks to collect this amount from the several stockholders. Thereafter plaintiff, as commissioner of banks for the state of Minnesota, presented to defendant Smith, as superintendent of banks of South Dakota, his claim for $7,700, being the amount of the 100 per cent assessment or superadded liability on 77 shares of stock held by Dakota Trust & Savings Bank in the Ruthton State Bank. Smith refused to accept or file this claim, and, on application of plaintiff, on July 30, 1925, an order was made by the circuit court of Minnehaha county, directing Smith to file the claim with the same force and effect as if it

had been presented and filed prior to October 9, 1924. This order was complied with, and the claim filed, and on August 6, 1926, it was formally rejected, whereupon this action was begun, in which judgment was given in favor of plaintiff against the superintendent of banks for $7,700 and costs, with the direction that the same be paid pro rata with other claims in the due course of administration of the affairs of the Dakota Trust & Savings Bank. From this judgment and an order denying a new trial, defendant Smith, as superintendent of banks, appeals.

Appellant says the appeal involves but three propositions: First, was respondent's claim barred because not presented within the time for filing claims? Second, is Dakota Trust & Savings Bank subject to stockholders' liability on stock taken on foreclosure of its lien on such stock held as collateral on a debt previously contracted in good faith, the stock being carried in the name of its officers on the books of the Ruthton bank, and more than six months having elapsed from the time it acquired the stock until it became insolvent? Third, is Dakota Trust & Savings Bank liable on the 14 shares of stock which it purchased for the purpose of controlling the Ruthton bank and thus preventing its consolidation with another bank?

■ While a stockholder's double or superadded liability arises at once upon his becoming a stockholder, it does not, under the statutes of Minnesota and the decisions of the courts of that state, exist as a claim that can be asserted by any one so long as the bank remains solvent and is a going concern. Hunt v. Roosen, 87 Minn. 68, 91 N. W. 259; Northwestern Trust Co. v. Bradbury, 117 Minn. 83, 134 N. W. 513, Ann. Cas. 1913D, 69. The Ruthton bank continued to be a going concern and presumably solvent until long after the time to present claims against the Dakota Trust & Savings Bank had expired, and there was therefore within the time when claims might be presented no claim that any one could assert in favor of the Ruthton bank. Its stockholders could not be resorted to upon the double liability until it had become insolvent and an order had been made by the district court of the county in which it was located, determining the amount of the liability to be collected from each stockholder and directing the commissioner of banks to collect, and, if necessary, sue for, such amount. We think, therefore, the claim did not come within the contemplation of sec-

tion 8933, R. C., which provides that all claims not presented within the time stated in the notice given by the superintendent of banks shall be forever barred. In Rundell v. Hirning, 49 S. D. 102, 206 N. W. 231, it is said that the provisions of section 8933, barring claims not filed with the superintendent of banks, is analagous to a similar provision of the Probate Code barring claims not filed with an executor or administrator, and serves a similar purpose. In Baird v. McMillan, 53 N. D. 257, 205 N. W. 682, 41 A. L. R. 177, it is held that a claim for a bank stockholder's superadded liability does not need to be presented to the executor of a deceased stockholder's estate where the bank did not suspend until after the expiration of the statutory period for filing claims against the decedent's estate.

The contention that the 63 shares of stock taken by the bank on foreclosure of the collateral having been carried on the books of the bank in the name of the cashier of the Dakota Trust & Savings Bank, and the certificates having been issued in his name, the bank cannot be liable, and that oral evidence is not admissible to show that the bank was, in fact, the real owner, cannot be sustained. Oral evidence is admissible to show that the real owner of stock in a corporation is some one other than the party in whose name it stands upon the books of the corporation. Houghton v. Hubbell, 91 F. 453, 33 C. C. A. 574; Byington v. Simpson, 134 Mass. 169, 45 Am. Rep. 314.

Appellant directs our attention to the clause in Code, section 8961, which provides that every bank shall keep a stock book which shall show a full and correct list of the names and addresses of all stockholders, and that "in all actions, suits and proceedings, such book shall be conclusive evidence of the facts therein stated," and contends that under this statutory provision oral evidence cannot be received to show that another than the party listed in the stock book is the owner of the stock so listed. But section 8779, relating to corporations generally, provides that the term "stockholder" as used therein, shall apply, not only to such persons as appear upon the books of the corporation to be such, but also to every equitable owner of stock, although the same appear on the books in the name of another. This necessarily implies that oral evidence may be given to show that one may be a stockholder, although the same appears upon the books in the

242

name of another. Construing these two sections together, it seems reasonable to say that the provision of section 8961, that the stock book shall be conclusive evidence of the facts therein stated, is only intended to mean that one correctly listed as a stockholder shall not be permitted to deny that he is such, although the stock may, in fact, be owned by another. Both may be liable, although there can be but one satisfaction. Byington v. Simpson, supra. "The fact that the record holders may be held does not necessarily mean that the actual holders may not be held." Houghton v. Hubbell, supra. Further, section 8961 can only apply to banks within this state; it has no extraterritorial force, and, under the law of Minnesota, which applies to the stock on which defendant is sued for the double liability, the stock book of the corporation is not conclusive evidence, and the real owner may be shown to be another than the record holder. Bartlett v. Stephens, 137 Minn. 213, 163 N. W. 288.

Section 8983, R. C., prohibits a bank from investing any of its funds in the stock of another bank or from becoming a purchaser or holder of shares in any other bank unless it shall be necessary to prevent a loss upon a debt previously contracted in good faith, and provides that stock so acquired shall within six months be disposed of at public or private sale, and after the expiration of six months any such stock shall not be considered part of the assets of the bank. But while a bank is prohibited from investing any of its funds in the stock of any other bank or corporation, it may lawfully acquire such stock by the necessary foreclosure of a lien thereon for a debt previously contracted in good faith, and, where it becomes the owner of stock in this manner, it is liable like any other stockholder for the statutory obligations of a stockholder. Germania Nat. Bank v. Case, 99 U. S. 628, 25 L. Ed. 448. The requirement that stock lawfully acquired must be disposed of within six months, and shall not thereafter be considered assets of the bank, does not of itself deprive the bank of the stock or make it no longer a stockholder. This provision doubtless gives the superintendent of banks authority to require the bank or its stockholders to substitute cash in place of this stock, but it does not deprive the bank of its ownership in the stock, and, so long as it remains owner of the stock, it is subject, like any other stockholder, to the superadded liability. We therefore conclude that Dakota Trust & Savings Bank is liable for the superadded

liability on the 63 shares of stock which it acquired by foreclosure of its lien thereon, but the question of its liability as a stockholder of the other 14 shares depends on other considerations. The obvious policy of the statute is to prevent banks from dealing in the stock of other corporations or from making any investment of their funds or risking their deposits in the stock of other corporations. The statute·is an express prohibition of any such investment or purchase, unless the purchase shall be necessary to prevent loss upon a debt previously contracted in good faith. We think the record clearly shows that the purchase of these 14 shares was not necessary to prevent such loss, but that, on the contrary, it was in the nature of a speculation amounting almost to a gamble, for the purpose of getting control of the Ruthton bank, and we cannot see that it assured that control any more than if the purchase had not been made. The stock of the bank consisted of 250 shares of par value of $100 each. Dakota Trust & Savings Bank held 63 shares; 14 additional made 77 shares, which was 49 short of a controlling interest. The officers of the Dakota Trust & Savings Bank testified that, with the co-operation of others opposed to consolidation, they expected to be able to prevent such consolidation, but they could not know the moment that one or more of those others might dispose of their stock to parties who would be in favor of consolidation. The purchase, therefore, of these additional shares, cannot be regarded as necessary to prevent loss for a debt previously contracted.

On May 8, 1922, Dakota Trust & Savings Bank had paid an assessment of 50 per cent on the 63 shares it had but recently acquired by foreclosure. On September 25, 1923, when the purchase of the additional 14 shares was made, the officers making the purchase knew that an additional 60 per cent assessment was being called for, and they purchased the 14 shares at 25 cents on the dollar in order, as they say, to get control of the bank and prevent a consolidation with another bank in the same town. The fact that shares could be bought at 25 cents on the dollar would ordinarily be considered a sign that the bank was unsafe and that the statutory liability was not unlikely to be called for at no remote date. We do not think that a South Dakota bank has authority to use the funds of its depositors in any such hazardous speculation. We agree with what is said in the case of First National Bank v. Con-

verse, 200 U. S. 425, 26 S. Ct. 306, 50 L. Ed. 537, in regard to such speculative investments, and hold that appellant is not liable for the superadded liability as to the 14 shares.

The judgment of the trial court is modified by substituting $5,500 in place of $7,700, and, as so modified, is affirmed. No costs will be taxed in this court.

SHERWOOD, P. J., and POLLEY, CAMPBELL, and BURCH, JJ., concur.