#27515-a-JMK
**2016 S.D. 61**

IN THE SUPREME COURT

OF THE

STATE OF SOUTH DAKOTA

* * * *

IN THE MATTER OF THE
ESTATE OF LORRAINE ISBURG FLAWS,
DECEASED.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
BRULE COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE BRUCE V. ANDERSON
Judge

* * * *

ROBERT R. SCHAUB of
Schaub Law Office, PC
Chamberlain, South Dakota


PAUL O. GODTLAND
Chamberlain, South Dakota                    Attorneys for appellants Audrey
                                             Isburg Courser and Clinton
                                             Baker.


STEVEN R. SMITH
Chamberlain, South Dakota                    Attorney for appellee Tamara
                                             Allen.

* * * *

ARGUED ON MARCH 22, 2016
OPINION FILED **08/31/16**

#27515

KERN, Justice

[¶1.]     Decedent named heirs in her will, but all heirs predeceased her, causing her estate to become subject to the laws of intestate succession. Decedent's brother had two children from his only marriage. These children were designated as heirs. The circuit court determined that decedent's brother's illegitimate daughter was also an heir entitled to inherit equally from decedent's estate. Brother's legitimate children appeal. We affirm.

## BACKGROUND

[¶2.]     On February 18, 2010, Lorraine Isburg Flaws, a member of the Crow Creek Tribe, died testate. Lorraine's will distributed her property to her husband and her only child, both of whom predeceased her. Lorraine's parents and Donald Isburg, her only sibling, also predeceased her. As Lorraine's will did not designate contingent beneficiaries, her estate was subject to the laws of intestate succession. Donald had two children from his marriage to Mavis Baker: Audrey Isburg Courser and Clinton Baker (Appellants). Donald also purportedly had two illegitimate daughters from other relationships: Yvette Herman, born June 1, 1970, and Tamara Isburg Allen, born October 11, 1965. Yvette and Tamara contend that in addition to Appellants, they are entitled to a share of Lorraine's estate. This appeal concerns Tamara. Tamara was not judicially determined to be Donald's paternal child during his lifetime. Tamara submits that Donald acknowledged her in writing during his lifetime by a paternity affidavit dated January 5, 1966. Therefore, the circumstances surrounding the probate of Donald's estate are relevant.

[¶3.] Donald was also a member of the Crow Creek Tribe and owned tribal land held in trust by the United States Government. Donald died August 24, 1979. Thereafter, the United States Department of the Interior, Bureau of Indian Affairs, Office of Hearings and Appeals, Probate Hearings Division (collectively the Interior Board of Indian Appeals or IBIA) probated Donald's estate. In April 1981, a notice of probate hearing was mailed to potential heirs, including his sister, Lorraine, and his legitimate children, Audrey and Clinton. Tamara did not receive notice. In a letter made under oath, Lorraine reported to the IBIA that she was Donald's sister and that Donald's only children were Audrey and Clinton. In October 1980, the Crow Creek Bureau of Indian Affairs (BIA) Superintendent filed a form entitled Data for Heirship Finding and Family History. This form disclosed Donald's assets and indicated that Audrey and Clinton, also enrolled members of the Tribe, were Donald's children. The IBIA completed the probate on June 8, 1981, and entered an order declaring Audrey and Clinton to be the sole heirs of Donald's estate.

[¶4.] Audrey and Clinton inherited Donald's trust land in which he shared an ownership interest with Lorraine. Audrey and Clinton became tenants in common with Lorraine. In July 2003, fee simple patents were issued to Lorraine, Audrey, and Clinton removing their land from trust. At the time of Lorraine's death in 2010, none of her land was held in trust with the federal government.

[¶5.] In early March 2010, after Lorraine's death, Audrey filed a petition for formal probate of Lorraine's estate in state court as none of Lorraine's assets were in trust with the federal government. Audrey petitioned for appointment as personal representative and to have Lorraine's heirs judicially determined. Tamara

and Yvette objected to Audrey's appointment and petitioned for appointment as co-personal representatives. After a hearing, the court appointed attorney Stan Whiting as special administrator of the estate.

[¶6.] In June 2010, Tamara and Yvette filed separate petitions with the IBIA to reopen Donald's probate to establish they were Donald's daughters and heirs. These requests were made 31 years after Donald died and 29 years after the probate was closed. In June 2011, the IBIA issued a show cause order, to which Audrey and Clinton responded. In April 2012, the Indian Probate Judge denied Tamara's and Yvette's requests to reopen Donald's probate. The probate court found that the real property had "passed out of trust" and was "no longer subject to the probate jurisdiction of the Department of Interior." Tamara did not appeal this order.

[¶7.] In October 2014, Appellants moved for summary judgment in state court against Tamara, alleging she lacked standing to assert she was an heir. Appellants argued that the IBIA order was controlling and Tamara's attempt to establish paternity in state court violated the Supremacy Clause and Separation of Powers Doctrine. Appellants further contended that Tamara could not establish paternity pursuant to SDCL 29A-2-114(c). The court denied the motion for summary judgment and set a court trial for February 17, 2015.

[¶8.] At the court trial, Tamara presented evidence of Donald's paternity. The court took the matter under advisement. On July 6, 2015, the court issued findings of fact and conclusions of law. The court found that Tamara was born in Mitchell, South Dakota to Barbara Allen on October 11, 1965. The hospital

prepared a certificate of live birth, which was signed by the attending physician. The certificate recorded her name as "Tamara Sue Thayer Isburg" and listed her father as Donald Isburg. Other identifying information provided that Donald Isburg was age 32, Indian, and a carpenter by trade. Tamara's birth certificate was filed on October 12, 1965 with the Registrar's Office. It listed Donald Isburg as the father of Tamara Sue Isburg. Less than three months later on January 5, 1966, Donald Isburg executed a paternity affidavit acknowledging Tamara as his child. The affidavit was sworn before a Notary Public and a social worker for the Department of Public Welfare, the precursor to the current Department of Social Services. The affidavit was filed with the Department of Vital Statistics.

[¶9.]       At the time of Donald's death in 1979, Tamara was thirteen years old. She received social security survivor benefits as his dependent until she turned eighteen. The court also found that Donald publicly acknowledged Tamara as his daughter by visiting her on occasion and giving her money. Tamara's sisters and aunt believed Donald was her father.

[¶10.]      On July 7, 2015, the court denied Appellants' motion for summary judgment and issued a judgment declaring heirship, finding Tamara "to be the biological child of Donald Isburg, making her an equal heir with Audrey Courser and Clinton Baker to the estate of Lorraine Flaws[.]" Appellants appeal the denial of their motion for summary judgment and the court's judgment declaring heirship.

[¶11.]      We restate Appellants' issues as follows:

> 1. Whether the circuit court erred by denying Appellants' motion for summary judgment.

2. Whether the circuit court erred in ruling Tamara was an heir under SDCL 29A-2-114.

## STANDARD OF REVIEW

[¶12.] A circuit court's jurisdiction is reviewed de novo. *Daktronics, Inc. v. LBW Tech Co.*, 2007 S.D. 80, ¶ 2, 737 N.W.2d 413, 416. Similarly, "[s]tatutory interpretation and application are questions of law, and are reviewed by this Court under the de novo standard of review." *State v. Powers*, 2008 S.D. 119, ¶ 7, 758 N.W.2d 918, 920.

[¶13.] A circuit court's findings of fact will be upheld "unless they are clearly erroneous." *Kreps v. Kreps*, 2010 S.D. 12, ¶ 25, 778 N.W.2d 835, 843. A finding of fact will be overturned on appeal if "a complete review of the evidence leaves the Court with a definite and firm conviction that a mistake has been made." *Id.* (quoting *Pietrzak v. Schroeder*, 2009 S.D. 1, ¶ 37, 759 N.W.2d 734, 743). Conclusions of law are reviewed under the de novo standard of review. *Tri-City Assocs., L.P. v. Belmont, Inc. (Tri-City I)*, 2014 S.D. 23, ¶ 19, 845 N.W.2d 911, 916.

## ANALYSIS

*1. Whether the circuit court erred by denying Appellants' motion for summary judgment.*

[¶14.] Appellants argue the circuit court erred in denying their motion for summary judgment for two reasons. First, Appellants submit that to allow Tamara to establish Donald's paternity in Lorraine's state court probate violates the Supremacy Clause and the Separation of Powers Doctrine. Appellants argue the determination of Donald's heirs must occur only in Donald's probate, which is in the exclusive jurisdiction of the Department of the Interior. Second, Appellants submit

that Tamara lacks standing as her claims are untimely and barred by statutes of limitations in SDCL 29A-3-412 and 43 C.F.R. § 30.243(a) (2016).

[¶15.] Tamara, in response, contends that the circuit court's determination of Lorraine's heirs did not impose upon federal jurisdiction in any way. Nor did it implicate the Supremacy Clause or the Separation of Powers Doctrine. She argues that, as Lorraine's estate does not contain any Indian trust property, her intestate rights should "be determined according to the laws of the jurisdiction where the probate was filed"—state court. Tamara also argues that the statutes of limitations relied upon by Appellants are inapplicable to the facts of her case.

### a. Supremacy Clause.

[¶16.] The United States Constitution article VI establishes the Constitution of the United States as "the supreme Law of the Land[.]" U.S. Const. art. VI, cl. 2. This supremacy is recognized in South Dakota Constitution article VI, § 26. The South Dakota Constitution also expressly recognizes the supremacy of the federal government in matters pertaining to Indian lands. It provides,

> That we, the people inhabiting the state of South Dakota, do agree and declare that we forever disclaim all right and title to . . . all lands lying within [the boundary of South Dakota] owned or held by any Indian or Indian tribes . . . and said Indian lands shall remain under the absolute jurisdiction and control of the Congress of the United States . . . .

S.D. Const. art. XXII, § 2. The United States Supreme Court has similarly restricted "the assertion of state regulatory authority over tribal reservations and members" in two areas. *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 142, 100 S. Ct. 2578, 2583, 65 L. Ed. 2d 665 (1980). First, a state's "exercise of such authority may be pre-empted by federal law." *Id.* The second restriction applies

where the exercise of authority "may unlawfully infringe 'on the right of reservation Indians to make their own laws and be ruled by them.'" *Id.* (quoting *Williams v. Lee*, 358 U.S. 217, 220, 79 S. Ct. 269, 271, 3 L. Ed. 2d 251 (1959)).

[¶17.] There is a strong presumption against federal preemption. *FMC Corp. v. Holliday*, 498 U.S. 52, 62, 111 S. Ct. 403, 410, 112 L. Ed. 2d 356 (1990) (noting the "presumption that Congress does not intend to pre-empt areas of traditional state regulation"). We begin "with the assumption that the States' historic police powers are not to be superseded, 'but that presumption can be overcome where . . . Congress has made clear its desire for pre-emption.'" *Botz v. Omni Air Int'l*, 286 F.3d 488, 493 (8th Cir. 2002) (quoting *Egelhoff v. Breiner*, 532 U.S. 141, 151, 121 S. Ct. 1322, 1330, 149 L. Ed. 2d 264 (2001).

[¶18.] Federal preemption "occurs when Congress . . . expresses a clear intent to pre-empt state law, . . . where there is implicit in federal law a barrier to state regulation, where Congress has legislated comprehensively, . . . or where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress." *La. Pub. Serv. Comm'n v. FCC,* 476 U.S. 355, 368-69, 106 S. Ct. 1890, 1898, 90 L. Ed. 2d 369 (1986) (citations omitted). *See also Estate of Ducheneaux v. Ducheneaux,* 2015 S.D. 11, ¶ 11, 861 N.W.2d 519, 524.

[¶19.] We first address explicit federal preemption. Appellants contend that the Supremacy Clause prohibits states "from exercising jurisdiction in Indian estate and probate matters[.]" They argue that, pursuant to 25 U.S.C. § 372, the Secretary of the Interior has "[c]onclusive jurisdiction over estate and probate proceedings

respecting descent and distribution of assets of an Indian."[1] Appellants then direct us to a number of cases in support of their position that the power to determine heirs rests exclusively with the IBIA and that such determination is final and conclusive. Appellants specifically argue that the IBIA's 1981 order determining Donald's heirs is binding and cannot be re-determined in Lorraine's state court proceeding. However, none of Lorraine's property is held in trust by the federal government. It is undisputed that Lorraine received a fee simple patent from the federal government in 2003 removing her land from trust. Accordingly, the bulk of Appellants' authority is inapposite as the cited cases involve the disposition of trust lands.[2] As the federal government has no property interest in Lorraine's assets, the statute is inapplicable.

---

1.      25 U.S.C. § 372 (2012) provides in part:

> When any Indian to whom an allotment of land has been made, or may hereafter be made, dies before the expiration of the trust period and before the issuance of a fee simple patent, without having made a will disposing of said allotment as hereinafter provided, the Secretary of the Interior, upon notice and hearing, under the Indian Land Consolidation Act [25 U.S.C.A. § 2201 et seq.] or a tribal probate code approved under such Act and pursuant to such rules as he may prescribe, shall ascertain the legal heirs of such decedent, and his decisions shall be subject to judicial review to the same extent as determinations rendered under section 373 of this title.

2.      Appellants direct us to *Bertrand v. Doyle*, 36 F.2d 351, 352 (10th Cir. 1929), and *Spicer v. Coon*, 238 P. 833, 835 (Okla. 1925), in support of the proposition that "the BIA's right to determine heirs relates to all questions of heirship" and "is not subject to re-determination in a state court[.]" Neither lends support for Appellants' position as both involve determination of heirship in trust lands. The court in *Bertrand* stated, "The Act [25 U.S.C. § 372] clearly applies to both past and future allotments and to all questions of heirship of the allottee *arising within the trust period.*" *Bertrand*, 36 F.2d at 352 (emphasis added). In *Spicer,* the court addressed the issue of whether state

(continued . . .)

[¶20.]     Additional grounds for federal preemption occur where there is implicit in federal law a barrier to state regulation or where the state law stands as an obstacle to the accomplishment of the objectives of Congress. *Estate of Ducheneaux*, 2015 S.D. 11, ¶ 11, 861 N.W.2d at 524; *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 95, 103 S. Ct. 2890, 2899, 77 L. Ed. 2d 490 (1983). Neither exists in this case. As discussed above, 25 U.S.C. § 372 grants the Department of the Interior exclusive jurisdiction and authority to probate Indian lands held in trust. The South Dakota Constitution and our case law recognize this exclusivity. Appellants have not established any barrier to the exercise of state court jurisdiction over non-trust lands. Nor have Appellants shown that the exercise of state jurisdiction is incompatible with a competing federal interest or contrary to the objectives of Congress.

---

(. . . continued)

courts had jurisdiction to review the Secretary of the Interior's determination of decedent's heirs. 238 P. at 835. The court properly determined that "the Secretary of the Interior was the sole tribunal for the determination of" decedent's heirs when decedent "died before the expiration of the trust period without having disposed of his allotment by will[.]" *Id.* at 834-35. Several other cases relied upon by Appellants are distinguishable for the same reason as all involve the distribution of trust land. *See Hallowell v. Commons*, 239 U.S. 506, 507-08, 36 S. Ct. 202, 203, 60 L. Ed. 409 (1916) (finding no jurisdiction existed for state court "to establish the equitable title of the plaintiff to an allotment" where allottee died intestate during the trust period); *Johnson v. Kleppe*, 596 F.2d 950, 952 (10th Cir. 1979) (finding state court lacked jurisdiction to review Secretary of Interior's determination of decedent's legal heirs where decedent died owning interest in allotted Indian lands); *Red Hawk v. Wilbur*, 39 F.2d 293, 293 (D.C. Cir. 1930) (affirming dismissal of "bill for injunction to restrain the Secretary of the Interior from proceeding to distribute an estate of an Indian to certain heirs which he had ascertained to be entitled thereto").

[¶21.] While it is evident that Congress intended to exercise jurisdiction over probates of Indian lands held in trust, there is no evidence that Congress intended to control probates of Indian estates involving non-trust land. *See* 25 U.S.C. § 2206 (2012). Such probates are treated the same as those of non-Indians owning fee simple land. Congress has not created a federal probate code but instead relies upon the states to establish their own probate codes. Congress, through federal legislation, has limited its jurisdiction of probates to those involving Indian lands held in trust. It is for this reason that the IBIA declined to exercise jurisdiction to consider Tamara's and Yvette's petitions to reopen Donald's estate. If Congress intended to maintain exclusive jurisdiction over all probates involving Indians under any circumstances, it would have enacted the necessary legislation to accomplish this intent.

[¶22.] Appellants' argument that the IBIA's 1981 order determining Donald's heirs is binding and cannot be re-determined in Lorraine's state court proceeding is similarly unavailing. The existence of trust lands in which the United States Government has an interest is a jurisdictional prerequisite for preemption. As the circuit court aptly noted, "The fatal flaw to Audrey's and Clinton's position is that this land is *not* a trust allotment or trust land held by the United States." An adjudication of Lorraine's heirs in a state court probate will not infringe upon the jurisdiction of the Secretary of the Interior.

b. *Separation of Powers*

[¶23.] Appellants also contend that to allow Tamara to seek heirship in Lorraine's estate would violate the Separation of Powers Doctrine, as it would allow

the circuit court to ignore the IBIA's 1981 federal administrative decision. Citing

*Plaut v. Spendthrift Farm, Inc.*, Appellants argue that to allow Tamara to prove

heirship in Lorraine's estate would be akin to ordering the circuit court to reopen

Donald's probate. 514 U.S. 211, 219, 115 S. Ct. 1447, 1453, 131 L. Ed. 2d 328 (1995)

(holding Congress cannot enact retroactive legislation requiring federal courts to set

aside final judgments). Tamara responds that she does not seek to reopen Donald's

probate, but rather seeks to prove her identity in Lorraine's estate, which does not

invoke federal jurisdiction. We agree with Tamara. As previously stated, the

determination of Lorraine's heirs in state court does not impinge upon the exclusive

jurisdiction of the Secretary of the Interior to determine the disposition of Indian

trust lands.

### c. *Statutes of Limitations.*

[¶24.] Appellants' arguments that Tamara's claims are barred by the statutes

of limitations set forth in SDCL 29A-3-412 and 43 C.F.R § 30.243(a)are misplaced.

Appellants argue that because Tamara was not named as an heir in Donald's estate

before it closed, Tamara's claims are barred by SDCL 29A-3-412. This statute

provides that an individual may petition to vacate a probate order "[t]welve months

after the entry of the order sought to be vacated[.]" Tamara no longer seeks a

determination of heirship in Donald's estate. The IBIA conclusively determined it

lacks jurisdiction to reopen the estate because the estate no longer contains any

lands held in trust. Tamara seeks a determination of heirship in Lorraine's estate.

Although SDCL 29A-3-412 is applicable to Lorraine's estate, Lorraine's probate

proceedings are in their earliest stages. Her heirs have not been conclusively determined, assets have not been divided, and no final order has been entered.

[¶25.] Similarly, Appellants' argument that Tamara is barred from re-opening Donald's estate per 43 C.F.R. § 30.243(a) is meritless. 43 C.F.R. § 30.243(a) provides that an interested party can petition to re-open a closed Indian probate "within 3 years after the date of the original decision and within 1 year after the petitioner's discovery of an alleged error[.]" Appellants argue that the only way for Tamara to prove that she is Donald's child is through Donald's probate. Because the statute of limitations has passed, Appellants argue that Tamara is bound by the IBIA's determination of Donald's heirs. But again, Tamara is not seeking to reopen Donald's estate. She seeks designation as Lorraine's heir in Lorraine's probate proceeding in state court. None of Lorraine's assets are held in trust by the federal government and Lorraine's estate proceedings are within the jurisdiction of the circuit court. 43 C.F.R. §30.243(a) is inapplicable.

> 2. *Whether the circuit court erred in ruling Tamara was an heir under SDCL 29A-2-114.*

[¶26.] Appellants argue that SDCL 29A-2-114(c) "clearly [does] not allow children that have been determined in the father's estate to be re-determined in a subsequent collateral estate." Appellants contend that Tamara may only inherit through Donald, and because she was not declared an heir in Donald's probate, she is precluded from recovery under 29A-2-114(c).

[¶27.] The methods for an illegitimate child to establish paternity are set forth in SDCL 29A-2-114, which provides in relevant part:

> (a) For purposes of intestate succession by, from, or through a person . . . an individual born out of wedlock is the child of that individual's birth parents.
>
>  . . . .
>
> (c) The identity of the mother of an individual born out of wedlock is established by the birth of the child. The identity of the father *may* be established by the subsequent marriage of the parents, by a written acknowledgement by the father during the child's lifetime, by a judicial determination of paternity during the father's lifetime, or by a presentation of clear and convincing proof in the proceeding to settle the father's estate.

(Emphasis added.) Appellants allege that SDCL 29A-2-114(c) is ambiguous. Appellants submit that the word "or" as used in the statute should not be given its normal disjunctive meaning as it would lead to an absurd result—namely that Tamara could seek heirship in Lorraine's estate. Appellants argue that whenever paternity is disputed, SDCL 29A-2-114(c) requires proof of paternity to be established only in the father's estate. Tamara denies that the statute is ambiguous and submits she is entitled to inherit under the laws of intestate succession through Donald pursuant to SDCL 29A-2-114(c).

[¶28.]     Ambiguity exists when a statute "is reasonably capable of being understood in more than one sense." *Zoss v. Schaefers*, 1999 S.D. 105, ¶ 6, 598 N.W.2d 550, 552. However, "[w]hen the language of a statute is clear, certain and unambiguous, there is no occasion for construction, and the court's only function is to declare the meaning of the statute as clearly expressed in the statute." *Id*. In our view, SDCL 29A-2-114(c) is unambiguous.

[¶29.]     The statute lists four methods by which Tamara, an illegitimate child, may establish the identity of her father with the final method separated by "or"—a disjunctive word. *See State v. Fifteen Impounded Cats*, 2010 S.D. 50, ¶ 14, 785

N.W.2d 272, 278 (declaring "or" a disjunctive word). When a disjunctive word is used, it is unnecessary to establish all methods provided in a list, and, instead, it is sufficient to establish any one or more of the methods. *See id.* (finding "the existence of any one or more of these four circumstances [separated by a disjunctive]" to be sufficient); 1A Sutherland Statutes and Statutory Construction § 21:14 (7th ed. 2009) ("The use of the disjunctive usually indicates alternatives and requires that those alternatives be treated separately."). As the methods to establish paternity are separated by the disjunctive "or," Tamara must establish any one or more of the four methods set forth in SDCL 29A-2-114(c).

[¶30.]      Appellants cite no case law for their argument that whenever paternity is contested it may only be established within the father's estate. This is contrary to the plain meaning of the statute and would lead to an absurd result. Under this interpretation, a litigant who established her father's paternity during his lifetime by written acknowledgment or by subsequent marriage of her parents would be required to establish paternity again after his death. This would render portions of the statute meaningless, which is contrary to principles of statutory construction. *See Argus Leader v. Hagen*, 2007 S.D. 96, ¶ 31, 739 N.W.2d 475, 484.

[¶31.]      It is undisputed that Tamara is unable to meet the criteria under three of the four methods. Tamara's mother and father were not married after her birth. Donald was not judicially determined to be her father during his lifetime. And Tamara was not determined to be Donald's heir as part of the IBIA probate. Tamara did, however, present proof that Donald provided a written acknowledgment of his identity as her father during her lifetime.

[¶32.] The circuit court found that Donald was listed as Tamara's father on her certificate of live birth filed with the Registrar on October 12, 1965. On January 5, 1966, Donald executed a paternity affidavit in the presence of a notary public and a social worker employed by the State of South Dakota acknowledging that he was Tamara's father. Donald publicly acknowledged Tamara by visiting her and giving her money. Based upon our review of the record, the circuit court's findings are supported by the evidence and are not clearly erroneous. We decline to address Appellants' remaining issues, finding them to be without merit.

## CONCLUSION

[¶33.] The circuit court did not err by denying Appellants' motion for summary judgment. Neither the Supremacy Clause nor Separation of Powers Doctrine preempted the state court's determination of Lorraine's heirs. Lorraine's probate is filed in state court and involves no trust land in which the Secretary of the Interior holds an interest. Nor is Tamara barred from seeking heirship in Lorraine's state court probate by the IBIA's 1981 probate order in Donald's estate. The circuit court properly exercised jurisdiction over the determination of Lorraine's heirs.

[¶34.] SDCL 29A-2-114(c) is unambiguous. Pursuant to the requirements of SDCL 29A-2-114(c), Tamara presented a written acknowledgment of paternity prepared by Donald during his lifetime. The circuit court did not err by rendering a judgment of heirship declaring Tamara a biological child of Donald and an equal heir with Audrey and Clinton. We affirm.

[¶35.] GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and WILBUR, Justices, concur.