#28116, #28146-rev in pt & aff in pt-JMK
**2018 S.D. 65**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

KAYLA FLUTH,                                          Plaintiff and Appellant,

    v.

SCHOENFELDER CONSTRUCTION,
INC.,                                                            Defendant,

    and

LARRY WEISSER,                                      Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
DAVISON COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE PATRICK T. SMITH
Judge

\* \* \* \*

MICHAEL E. UNKE                                   Attorney for plaintiff and
Salem, South Dakota                                 appellant.

DOUGLAS M. DEIBERT
MELISSA R. JELEN
Caldwell, Sanford, Deibert
    & Garry LLP                                           Attorneys for defendant and
Sioux Falls, South Dakota                        appellee, Larry Weisser.

\* \* \* \*

CONSIDERED ON BRIEFS ON
JANUARY 8, 2018
OPINION FILED **08/29/18**

#28116, #28146

KERN, Justice

[¶1.] Kayla Fluth sued Larry Weisser and Schoenfelder Construction, Inc., (Schoenfelder) to recover damages for flooding in her basement caused by a waterline leak on Weisser's property. Prior to trial, Schoenfelder made an offer of judgment for $7,500. Fluth accepted, Schoenfelder paid Fluth, and Fluth filed a satisfaction of judgment. Weisser then moved for summary judgment, arguing a satisfaction of judgment discharges all other joint tortfeasors from liability. The circuit court granted the motion, and Fluth appeals. We reverse in part and affirm in part.

## Facts and Procedural History

[¶2.] On June 3, 2012, a disgruntled tenant set off a gas explosion in the basement of one of Weisser's Mitchell, South Dakota rental properties. The explosion lifted the house off its foundation and caused extensive damage to the interior. After visiting the site, Weisser contacted Schoenfelder to demolish the home and grade the property to normal elevation.

[¶3.] Shortly after Schoenfelder began tearing down the house, Weisser met with Brian Wendelboe, the Mitchell Water Distribution Department foreman. City officials had attempted to access the waterline themselves the night of or day after the explosion, but tree roots obstructed access to the shutoff valve at the curb. When deposed, Wendelboe claimed he told Weisser that the waterline accessing the property needed to be shut off by a licensed plumber at either the street-curb valve or at the water main beneath the street. Wendelboe also claimed he told Weisser that the waterline could be bent over and hammered shut only as a temporary fix.

-1-

According to Wendelboe, when he asked Weisser how he intended to deal with shutting the water off permanently, Weisser responded, "Let's not worry about it right now."

[¶4.]     Weisser shut off the water in the basement and had the water meter removed.  During demolition work on July 3, 2012, Schoenfelder broke the waterline.  Schoenfelder bent the pipe over and hammered it shut to temporarily lessen the flow of water.  Weisser then hired Krohmer Plumbing to shut off the water permanently at the curb.  Schoenfelder dug up the curb stop, and Krohmer attempted to reach the shutoff valve.  However, the tree again rendered the shutoff valve inaccessible.  Schoenfelder claims that Weisser instructed Schoenfelder to "finish the job, cover it up."  Weisser did not subsequently contact the City of Mitchell to have the tree removed or have the water valve shut off.

[¶5.]     The following spring, Fluth noticed water penetrating her basement.  After tearing out the boards and sheet rock on the west wall, Fluth discovered extensive water damage.  On June 28, 2013, Fluth contacted law enforcement after seeing water pooling on Weisser's empty lot.  Wendelboe called Weisser and informed him of the situation, and Weisser again hired Krohmer to shut off the water.  The Mitchell Parks and Recreation Department cut down the tree in front of the property, enabling Krohmer to access the shutoff valve at the curb.  Fluth has not experienced any further trouble with ground water entering her basement.

[¶6.] Fluth subsequently brought suit against Weisser and Schoenfelder,[1] alleging fraud and negligence. In her January 21, 2015 amended complaint, Fluth alleged the leak caused water to enter her basement, damaging her property and promoting growth of mold hazardous to her family's health. Fluth sought compensatory and punitive damages.

[¶7.] The court scheduled a three-day trial to begin on June 29, 2016. On June 2, 2016—just weeks before trial—Schoenfelder made Fluth an offer of judgment for $7,500. On June 15, 2016, Fluth accepted Schoenfelder's offer, and Schoenfelder later remitted the funds. On July 18, 2016, Fluth filed a satisfaction of judgment.

[¶8.] On June 22, 2016, Fluth, having obtained permission from the court, filed a second amended complaint dismissing Schoenfelder as a defendant and adding claims of deceit and "intentional, willful, wanton, and malicious conduct" against Weisser. Fluth again requested compensatory and punitive damages. The court rescheduled the trial for January 2017 to allow the parties time to complete additional pretrial proceedings. On October 13, 2016, Weisser moved for partial summary judgment on the issues of punitive damages and on Fluth's theories of deceit, fraudulent concealment, and "intentional, willful, wanton, and malicious conduct." At a November 16, 2016 motions hearing, the circuit court granted Weisser's motion for partial summary judgment on the issues of deceit and fraudulent concealment. However, it denied Weisser's motion to dismiss Fluth's

---

1. In her original complaint, Fluth also named Krohmer as a defendant. However, on April 15, 2014, the court granted Krohmer's motion for summary judgment, concluding Krohmer did not owe Fluth a legal duty.

claim of "intentional, willful, wanton, and malicious conduct" and her request for punitive damages. The court also allowed discovery of Weisser's financial information prior to trial but barred the jury from considering the issue of proportionate fault, stating that SDCL 15-8-17 only authorized a pro-tanto offset.

[¶9.] On November 30, 2016, Weisser moved the circuit court to permit either a cross-claim or a third-party action against Schoenfelder. On December 15, 2016, Weisser filed another motion for summary judgment pursuant to SDCL 15-6-56(c)(2). Weisser argued that Fluth discharged all other joint tortfeasors from liability when she satisfied her claim with Schoenfelder.

[¶10.] On January 3, 2017, Fluth and Weisser attended a hearing on Weisser's motions. Schoenfelder's counsel also appeared at the hearing. The court orally denied Weisser's motion to permit a cross-claim or third-party action against Schoenfelder, reasoning that "allowing [a third-party action] at this late hour with trial next week and with a party already resolving their exposure through a satisfaction of judgment greatly prejudices that party . . . ." As to Weisser's motion for summary judgment, the court observed that the case presented a question of first impression. Citing the "well-settled rule" established in other jurisdictions that "satisfaction of one judgment precludes action against another joint tortfeasor," the court granted summary judgment. The court set forth its rulings in an order dated January 6, 2017. Fluth appeals, raising the following issue for our review:

> 1. Whether the circuit court erred by granting Weisser's motion for summary judgment.

Weisser, by notice of review, raises several additional issues, which we consolidate as follows:

-4-

2.   Whether Weisser is entitled to a pro-rata offset on the negligence claim as determined by a jury, and whether Weisser should have been permitted to bring a cross-claim or third-party action against Schoenfelder.

3.   Whether the circuit court should have granted Weisser's motions for partial summary judgment on Fluth's request for punitive damages for Weisser's alleged intentional, willful, wanton, and malicious conduct.

### Analysis and Decision

1.   *Whether the circuit court erred by granting Weisser's motion for summary judgment.*

[¶11.]     Fluth argues that the circuit court erred by granting Weisser's motion for summary judgment, contending that SDCL 15-8-16 permits a plaintiff to bring a claim against one joint tortfeasor despite obtaining a satisfaction of judgment against the other. According to Fluth, the words "recovery of a judgment" contained in SDCL 15-8-16 encompass a satisfaction. Thus, Fluth argues that filing a satisfaction of judgment against Schoenfelder had no effect on Weisser's liability. As a case of first impression in South Dakota, Fluth contends the statute's plain meaning and the decisions of out-of-state courts support her position.

[¶12.]     "[S]tatutory interpretation is a question of law, reviewed de novo." *Upell v. Dewey Cty. Comm'n*, 2016 S.D. 42, ¶ 6, 880 N.W.2d 69, 71. In discerning the intent of the Legislature, we examine statutory language by "attempt[ing] to give words their plain meaning and effect . . . ." *Gloe v. Union Ins. Co.*, 2005 S.D. 30, ¶ 8, 694 N.W.2d 252, 256. In construing an ambiguous statute, a court may examine "the legislative history, title, and the total content of the legislation." *Zoss v. Schaefers*, 1999 S.D. 105, ¶ 6, 598 N.W.2d 550, 552.

[¶13.] In 1945, the South Dakota Legislature codified the 1939 version of the Uniform Contribution Among Tortfeasors Act (UCATA) at SDCL 15-8-11 to 15-8-15 and 15-8-16 to 15-8-22. *W. Consol. Co-op. v. Pew*, 2011 S.D. 9, ¶ 57, 795 N.W.2d 390, 403 (Zinter, J., concurring specially and concurring in result). "That Act creates and regulates the right of contribution among 'joint tortfeasors.'" *Id.* (citing SDCL 15-8-11). SDCL 15-8-16, which codifies § 3 of the UCATA, provides that "[t]he recovery of a judgment by the injured person against one joint tort-feasor does not discharge the other joint tort-feasors." SDCL 15-8-17, which codifies § 4, further provides:

> A release by the injured person of one joint tort-feasor, whether before or after judgment, does not discharge the other tort-feasors unless the release so provides; but reduces the claim against the other tort-feasors in the amount of the consideration paid for the release, or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid.

Although the Uniform Law Commission revised the UCATA in 1955, the Legislature did not amend SDCL chapter 15-8 to reflect those changes. Steven D. Kelley, Comment, *South Dakota's Uniform Contribution Among Tortfeasors Act: Unsettling Issues Regarding Settlement and Release of Joint Tortfeasors*, 36 S.D. L. Rev. 600, 600 (1991).

[¶14.] At issue is the meaning of the words "recovery of a judgment" in SDCL 15-8-16. Prior to adopting the UCATA, we subscribed to the general proposition that "there can be but one satisfaction." *Veigel v. Dakota Trust & Sav. Bank*, 55 S.D. 236, 225 N.W. 657, 659 (1929). Accordingly, satisfaction of a judgment against one tortfeasor discharged other tortfeasors who were liable for the same injury. *See Kennedy v. Garrigan*, 23 S.D. 265, 121 N.W. 783, 784 (1909).

[¶15.]        Weisser acknowledges that SDCL 15-8-16 abrogated this rule when a plaintiff only recovers a judgment against a tortfeasor.  However, he argues that satisfaction is a concept distinct from recovery and that "recovery of a judgment" does not include a satisfaction.  Therefore, Weisser contends that although SDCL 15-8-16 permits a party to recover multiple judgments without discharging other joint tortfeasors, the statute only means a party may obtain multiple renditions[2] or executions[3] on a judgment.  Under Weisser's reading, SDCL 15-8-16 did not change the common-law rule of discharge for satisfactions, and thus Fluth discharged Weisser of any liability when she satisfied her claim against Schoenfelder.

[¶16.]        We first observe that SDCL 15-8-16 contains ambiguity.  "Ambiguity exists when a statute 'is reasonably capable of being understood in more than one sense.'"  *In re Estate of Flaws*, 2016 S.D. 61, ¶ 28, 885 N.W.2d 580, 587 (quoting *Zoss*, 1999 S.D. 105, ¶ 6, 598 N.W.2d at 552).  The language of the statute lends itself to more than one reasonable interpretation.  "Recovery of a judgment"[4] could

---

2.    A *rendition of judgment* is "[t]he judge's oral or written ruling containing the judgment entered."  *Rendition of judgment*, *Black's Law Dictionary* (10th ed. 2014).

3.    An *execution of judgment* is "[a] court order directing a sheriff or other officer to enforce a judgment, usually by seizing and selling the judgment debtor's property."  *Execution*, *Black's Law Dictionary* (10th ed. 2014).

4.    *Recovery* means "[t]he obtainment of a right to something (esp. damages) by a judgment or decree" or "[a]n amount awarded in or collected from a judgment or decree."  *Recovery*, *Black's Law Dictionary* (10th ed. 2014).

      A *satisfaction of judgment* is "[t]he complete discharge of obligations under a judgment" or "[t]he document filed and entered on the record indicating that a judgment has been paid."  *Satisfaction of judgment*, *Black's Law Dictionary* (10th ed. 2014).  "This double usage can give rise to confusion, and it is often necessary to read the cases closely to determine" how it is being used.  47 Am.

(continued . . .)

mean collection of an amount awarded under the judgment, i.e., receipt of the money owed by the defendant. Alternatively, it could mean obtaining a rendition of the judgment itself, not the award provided therein. *See Livingston v. Bishop*, 1 Johns. 290, 291 (N.Y. Sup. Ct. 1806).

[¶17.] "When called upon to construe ambiguous statutes, courts may look to 'the legislative history, title, and the total content of the legislation.'" *Zoss*, 1999 S.D. 105, ¶ 6, 598 N.W.2d at 552 (quoting *LaBore v. Muth*, 473 N.W.2d 485, 488 (S.D. 1991)). The South Dakota Legislature adopted the UCATA in 1945 without comment on the meaning of the word *recovery*. 1945 S.D. Sess. Laws ch. 167. Other states with laws enacted resembling the 1939 version of the UCATA include Arkansas, Delaware, Maryland, New Mexico, Pennsylvania, and Rhode Island. Richard A. Rosen et al., *Settlement Agreements in Commercial Disputes* § 14.02 n.9 (1st ed. 2018). While some of these jurisdictions distinguish a recovery from a satisfaction, others have held that the former encompasses the latter. The principal cases expounding these competing views are *Hackett v. Hyson*, 48 A.2d 353 (R.I. 1946) and *Hilbert v. Roth*, 149 A.2d 648 (Penn. 1959).

[¶18.] In *Hackett*, the Supreme Court of Rhode Island held that under its identical version of § 3 of the UCATA, satisfaction of a judgment against one joint tortfeasor did not discharge other joint tortfeasors. The court reasoned that if the state's legislature intended "recovery of a judgment . . . to mean merely rendition of the judgment of the injured person, then it accomplished nothing" because "that

---

(. . . continued)
Jur. 2d *Judgments* § 765 n.5; *see also Brigdon v. Covington*, 298 N.W.2d 279, 280 (Iowa 1980).

was already the law." *Hackett*, 48 A.2d at 354. Conversely, if "recovery of a judgment" meant "actual recovery on the judgment and not mere rendition of the judgment, then it did accomplish something, namely, the reversal of the common-law rule that the satisfaction by one joint tortfeasor of the judgment discharged the other joint tortfeasors." *Id.* at 354–55. The court stated it would "construe the legislative language so as to give it meaning." *Id.* at 355. Additionally, the court found its interpretation of § 3 of the UCATA better comported with § 4: "construing the words 'recovery of a judgment' . . . to mean merely the rendition of a judgment" would result in an "inconsistency between payment of a judgment by one joint tortfeasor discharging all other joint tortfeasors and payment for an ordinary release . . . not discharging the other joint tortfeasors." *Id.* Accordingly, the court concluded that a "recovery of a judgment" under § 3 included satisfaction of a plaintiff's judgment. *Id.* However, the court noted that the amount of the satisfaction would reduce the claim against other joint tortfeasors in the same way a release would under § 4. *Id.*

[¶19.]    The Supreme Court of Pennsylvania reached the opposite conclusion in *Hilbert*. The court presumed the drafters of the UCATA deliberately chose their words, observing that "[h]ad the legislature intended to include satisfaction of a judgment in § 3 [it] could readily have said so." *Hilbert*, 149 A.2d at 651. Acknowledging *Hackett*, the court stated that it could not "accept the conclusion that in failing to change the common law the legislature accomplished nothing." *Id.* at 652. Further, the court drew attention to a recommended change to the 1955 revision of the UCATA that appended "unless the judgment is satisfied" to § 3. *Id.*

at 641. The Commissioner's Note on the recommendation stated: "This was Section 3 of the 1939 Act. It simply states the well-established rule that the injured party in obtaining judgment against one tortfeasor does not thereby discharge the others, although there may, of course, be but one satisfaction of the claim." *Id.*

[¶20.] Other courts interpreting the UCATA have cited these cases in staking out their positions. *See, e.g.*, *Frank v. Volkswagenwerk, A.G. of W. Germany*, 522 F.2d 321, 324 (3d Cir. 1975) (citing *Hilbert* in holding that a full satisfaction of a judgment discharges a second tortfeasor); *Smith v. Tipps Eng'g & Supply Co.*, 333 S.W.2d 483, 957 (Ark. 1960) (indicating its agreement with *Hackett*'s interpretation); *Grantham v. Bd. of Cty. Comm'rs for Prince George's Cty.*, 246 A.2d 548, 554–55 (Md. 1968) (citing *Hilbert* as the more persuasive authority); *Rio Grande Gas Co. v. Stahmann Farms, Inc.*, 457 P.2d 364, 367 (N.M. 1969) (stating the rationale in *Hackett* "is better reasoned and more persuasive").

[¶21.] In resolving the ambiguity in SDCL 15-8-16 in this case, we conclude that although Fluth filed a satisfaction of a judgment, doing so did not automatically discharge Weisser. As the Supreme Court of Maryland, which had previously adopted the *Hilbert* view, explained regarding the effects of a consent judgment:

> When an action for damages proceeds to trial and a judgment is entered on the verdict, that judgment represents a final determination of the plaintiff's claim for those damages. It is entirely appropriate to bind the plaintiff to that assessment . . . . But these principles do not necessarily apply to a consent judgment.[5] The issue of full damages generally has not been

---

5    A *consent judgment* is defined as "[a] settlement that becomes a court judgment when the judge sanctions it. In effect, an agreed judgment is

(continued . . .)

> litigated when a consent judgment is entered and . . . the parties may or may not agree that the amount being entered by consent represents the plaintiff's full claim for damages.

*Welsh v. Gerber Products, Inc.*, 555 A.2d 486, 492 (Md. 1989).

[¶22.] In this case, the circuit court observed that the offer of judgment acted as "an effective release." Yet, no intention appears from the face of the agreement that the amount provided represented the full extent of Fluth's damages. *See* SDCL 15-8-17. We conclude that Fluth did not discharge Weisser from liability if the satisfaction of judgment did not reflect a full satisfaction of Fluth's damages.

[¶23.] We emphasize, however, that this conclusion does not permit plaintiffs to obtain a double recovery. Rather, satisfaction of a judgment reduces the award of a subsequent judgment against other tortfeasors using the same formula for releases under SDCL 15-8-17. *Accord Hackett*, 48 A.2d at 355. Accordingly, Fluth's satisfaction of judgment against Schoenfelder did not automatically discharge Weisser, and the circuit court erred in granting Weisser's motion for summary judgment. On remand, the circuit court must first determine whether Schoenfelder's satisfaction of judgment was a full or partial satisfaction. Although a full satisfaction would discharge Weisser, a partial satisfaction would only reduce the award. *See* SDCL 15-8-17.

> 2. *Whether Weisser is entitled to a pro-rata offset on the negligence claim as determined by a jury, and whether Weisser should have been permitted to bring a cross-claim or third-party action against Schoenfelder.*

---

(. . . continued)
merely a contract acknowledged in open court and ordered to be recorded, but it binds the parties as fully as other judgments." *Judgment, Black's Law Dictionary* (10th ed. 2014).

[¶24.]     Weisser argues the court erred by allowing only an offset of $7,500, the amount of Schoenfelder's offer of judgment, in the event Fluth prevailed at trial. According to Weisser, SDCL 15-8-17 entitles him to a pro-rata reduction to be determined by a jury if such amount exceeds $7,500.  Further, Weisser argues that the court erred by denying his motion to bring a cross-claim or third-party action against Schoenfelder.  Weisser asserts that a cross-claim or third-party action may be asserted at any time, even after judgment.  However, Fluth contends that the statute of limitations for negligence would bar Weisser's cross-claim or third-party action as untimely.  *See* SDCL 15-2-14(3); *Rehm v. Lenz*, 1996 S.D. 51, ¶ 21, 547 N.W.2d 560, 566.  And Schoenfelder, at the January 3, 2017 motions hearing, argued that a satisfaction of judgment amounts to a "determination of fault" by the jury, foreclosing the possibility for contribution unless a cross-claim was previously filed.

[¶25.]     At the November 16, 2016 motions hearing, the circuit court, citing *Sheesley v. The Cessna Aircraft Co.*, No. Civ. 02-4185-KES, 2006 WL 1084103, at *40 (D.S.D. 2006), observed that SDCL 15-8-17 only permits a pro-tanto offset equal to the amount of the release unless the release "specifically contemplates a proportionality."  The court reasoned that Fluth provided "an effective release" to Schoenfelder that did not contain language related to fault, thus entitling Weisser to a reduction of only $7,500.  At the January 3, 2017 motions hearing, the court stated that a defendant may nevertheless file a cross-claim or third-party action against the settling defendant to determine proportionate fault.  However, the court noted that Schoenfelder probably "would have insisted on a release if there was a

cross-claim that [Schoenfelder] needed to resolve" instead of a satisfaction of judgment and that Weisser should have pursued a cross-claim or third-party action prior to trial. Concluding that permitting "a cross-claim after a party has settled greatly prejudices that party," the court denied the motion "at this late hour with trial next week and with a party already resolving their exposure through a satisfaction of judgment[.]"

[¶26.] SDCL 15-8-17 provides that a release reduces a claim against other joint tortfeasors "in the amount of the consideration paid for the release, or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid." We stated in *Setliff v. Stewart* that under SDCL 15-8-17, "the claim against the other tortfeasors is reduced by the amount of the settlement." 2005 S.D. 40, ¶ 44, 694 N.W.2d 859, 871; *accord Duncan v. Pennington Cty. Hous. Auth.*, 283 N.W.2d 546, 552 (S.D. 1979). Even assuming SDCL 15-8-17 applied to a judgment of satisfaction operating as "an effective release," the statute, by its plain language, does not provide for a pro-rata deduction unless so provided by the release, and here there is nothing in the satisfaction providing for a pro rata reduction. Nevertheless, "a party may not seek 'double recovery'" for a single injury. *Estate of Ducheneaux*, 2018 S.D. 26, ¶ 34, 909 N.W.2d 730, 742; *accord Ripple v. Wold*, 1996 S.D. 68, ¶ 7, 549 N.W.2d 673, 675. Therefore, assuming without deciding that Fluth's satisfaction of judgment against

Schoenfelder was not a full satisfaction that released Weisser from all liability, *see supra* ¶ 23, Weisser would only be entitled to a pro-tanto offset of $7,500.[6]

[¶27.]     Weisser finally argues he should have been allowed to bring a cross-claim for contribution against Schoenfelder.  The circuit court denied Weisser's motion because it was made too close to trial and granting it would have greatly prejudiced Schoenfelder, who decided to settle without knowing there would be a cross-claim.  We note that in light of this appeal, the circuit court's concern with the late filing of the motion to file a cross-claim is no longer a concern.  We also acknowledge that judicial economy favors allowing cross-claims for contribution to determine proportionate fault in a single trial.  *See, e.g.*, *Whiting v. Hoffine*, 294 N.W.2d 921, 923 (S.D. 1980) (explaining that the right of contribution "may be exercised by the defending party in the principle action.").  With regard to prejudice, if Schoenfelder wished to foreclose Weisser's right to obtain contribution, Schoenfelder should have sought a release that met the requirements of SDCL 15-8-18.

[¶28.]     However, a cross-claim or third-party action may still be barred as untimely.  *See Jorgensen Farms, Inc. v. Country Pride Corp.*, 2012 S.D. 78, ¶ 31, 824 N.W.2d 410, 419 (barring an appellant's contribution claim based on South Dakota's four-year statute of limitations for breach-of-contract actions); *see also Avera St. Luke's Hosp. v. Karamali*, 848 F. Supp. 2d 1017, 1022–23 (D.S.D. 2012)

---

6.     Because the issue in this case only relates to a potential offset of a plaintiff's damage award against a joint tortfeasor, we express no opinion on the method of calculating amounts owed in a contribution action between the joint tortfeasors.

("Thus, the date the statute of limitations begins to run on contribution and indemnity claims is the date money is paid . . . ."). Weisser, in his notice of review, devotes only the following analysis to the issue: "If Weisser is denied the right to pursue contribution or indemnity from . . . Schoenfelder in the resulting trial, Weisser should be able to pursue such remedies through a [c]ross-[c]laim, which can be asserted any time, even after [j]udgment." On remand, the parties should be permitted to brief the issue whether the limitations period on a contribution claim has run. If the court finds that the settlement was not a full satisfaction, it should reconsider whether allowing the cross-claim and third-party action would be in the interests of justice.

> 3. *Whether the circuit court should have granted Weisser's motions for partial summary judgment on Fluth's request for punitive damages for Weisser's alleged intentional, willful, wanton, and malicious conduct.*

[¶29.]        Weisser argues that the circuit court erred by denying his motion for partial summary judgment on Fluth's claim for punitive damages.[7] Although Weisser concedes the possibility that he may have been negligent, he claims that "simply forgetting about the water line" is insufficient to warrant a claim for

---

7.    In her second amended complaint, Fluth alleged four causes of action: negligence, deceit, fraudulent concealment, and "intentional, willful and wanton and malicious conduct." A claim for punitive damages requires proof of "willful, wanton or malicious conduct[.]" SDCL 21-1-4.1. Because Fluth's claims for deceit and fraudulent concealment were dismissed, the only remaining claim is negligence. Conduct that is merely negligent cannot support a claim for punitive damages. *Vilhauer v. Horsemens' Sports, Inc.*, 1999 S.D. 93, ¶ 19, 598 N.W.2d 525, 529. The question here is whether there are sufficient facts in the record to show that Weisser's conduct was not just negligent, but may have risen to the level of "intentional, willful and wanton and malicious misconduct" as required for punitive damages.

punitive damages. Weisser also argues he did not know Fluth and had no reason to inflict harm on her.

[¶30.] A motion for summary judgment requires the moving party to show no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Bego v. Gordon*, 407 N.W.2d 801, 804 (S.D. 1987). In reviewing the grant of summary judgment, we view the evidence in favor of the non-movant and place the burden on the moving party to show an absence of material fact. *Morgan v. Baldwin*, 450 N.W.2d 783, 785 (S.D. 1990); *Wilson v. Great N. Ry. Co.*, 83 S.D. 207, 212, 157 N.W.2d 19, 21 (1968).

[¶31.] "Claims for punitive damages are prohibited in this state unless expressly authorized by statute." *Dahl v. Sittner*, 474 N.W.2d 897, 900 (S.D. 1991) (citing SDCL 21-1-4). Punitive damages may be awarded "for the sake of example . . . by way of punishing the defendant" and "are distinct from and 'in addition to actual damage.'" *Wyman v. Terry Schulte Chevrolet, Inc.*, 1998 S.D. 96, ¶ 29, 584 N.W.2d 103, 107 (citing SDCL 21-3-2). SDCL 21-3-2 provides in part that punitive damages may be awarded in addition to actual damages if a defendant is "guilty of oppression, fraud, or malice, actual or presumed . . . committed intentionally or by willful and wanton misconduct, in disregard of humanity . . . ." Further, SDCL 21-1-4.1 provides:

> In any claim alleging punitive or exemplary damages, before any discovery relating thereto may be commenced and before any such claim may be submitted to the finder of fact, the court shall find, after a hearing and based upon clear and convincing evidence, that there is a reasonable basis to believe that there has been willful, wanton or malicious conduct on the part of the party claimed against.

This burden "is a preliminary, lower-order quantum of proof than must be established at trial." *Case v. Murdock*, 488 N.W.2d 885, 891 (S.D. 1992). To succeed on a claim for punitive damages, there must be "a showing of either actual or presumed malice." *Dahl*, 474 N.W.2d at 900; *accord Biegler v. Am. Family Mut. Ins. Co.*, 2001 S.D. 13, ¶ 45, 621 N.W.2d 592, 605.

[¶32.]      Regardless of whether Weisser harbored ill will toward Fluth, punitive damages may still be awarded "when a person acts willfully or wantonly to the injury of others." *Murdock*, 488 N.W.2d at 891. "It implies that the act complained of was conceived in the spirit of mischief or criminal indifference to civil obligations." *Id.*; *see also Flockhart v. Wyant*, 467 N.W.2d 473, 478 (S.D. 1991) ("Punitive damages are recoverable . . . in cases involving willful and wanton misconduct that indicates a reckless disregard for one's rights.").

[¶33.]      Here, a dispute exists over what Weisser knew regarding the broken water pipe on his property, the amount of water that was leaking from the pipe for nearly a year after it was temporarily crimped shut, and the likelihood that the water would cause injury to others. A dispute also exists concerning what he said and did after the water pipe broke during demolition work. The evidence raises questions of fact whether Weisser acted willfully, wantonly, and maliciously. With these facts in mind, we cannot say the court erred in denying Weisser's motion for

partial summary judgment.[8]  Consequently, it also did not err in granting Fluth's motion permitting discovery on the issue of punitive damages for negligence.

**Conclusion**

[¶34.]    Because we conclude that SDCL 15-8-16 may permit Fluth to proceed in her suit against Weisser despite receiving a satisfaction of judgment from Schoenfelder, we reverse and remand on that issue.  We remand to the circuit court to reconsider whether a cross-claim or third-party action against Schoenfelder should be permitted.  We affirm the circuit court's denial of Weisser's motion for summary judgment on the issue of punitive damages as genuine issues of material fact exist about what Weisser knew and did in response to the waterline leak.  Finally, we affirm the circuit court's conclusion that Weisser is entitled to only a pro-tanto offset of $7,500 should the damages exceed that amount at trial.

[¶35.]    GILBERTSON, Chief Justice, ZINTER and JENSEN, Justices, and SEVERSON, Retired Justice, concur.

[¶36.]    SALTER, Justice, not having been a member of the Court at the time this action was assigned to the Court, did not participate.

---

8.    The court advised the parties that after the completion of Fluth's case-in-chief, Weisser could renew his motion for dismissal of Fluth's punitive damages claim.